In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00015-CV


______________________________




PULAK KUMAR BARUA, Appellant



V.



COUNTY OF DALLAS, DALLAS COUNTY COMMUNITY


COLLEGE DISTRICT, PARKLAND HOSPITAL DISTRICT,


DALLAS COUNTY SCHOOL EQUALIZATION FUND,


CITY OF DALLAS, AND DALLAS INDEPENDENT


SCHOOL DISTRICT, Appellees




 


On Appeal from the 191st Judicial District Court


Dallas County, Texas


Trial Court No. 95-30014-T-J




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Pulak Kumar Barua appeals the trial court's granting of summary judgment in favor
of Dallas County, in its own behalf, and on behalf of other political subdivisions whose
taxes are collected by the Dallas County Tax Assessor Collector: the Dallas County
Community College District, the Parkland Hospital District, the Dallas County School
Equalization Fund, the City of Dallas, and the Dallas Independent School District
(hereinafter Dallas County) regarding a property owned by Barua at 2727 Kings Road,
Dallas, Texas. The trial court granted judgment in favor of Dallas County for ad valorem
taxes owed by Barua to Dallas County, the Dallas County Community College District, the
Parkland Hospital District, and the Dallas County School Equalization Fund in the total sum
of $58,608.00 for the years 1993-2000. The trial court also ordered the City of Dallas and
the Dallas Independent School District recover $150,438.99 in taxes for the years 1994-2000. The trial court ordered the City of Dallas recover from Barua $455,035.70 for a
demolition lien, $6,431.97 for a weed lien, and $3,412.82 for another weed lien. The trial
court further found the market value of the property was $253,710.00. The trial court
foreclosed the above-referenced liens and ordered the property sold at a sheriff's sale.

 Barua appeals the granting of Dallas County's motion for summary judgment,
contending that: (1) Dallas County's claims are barred by waiver; (2) Dallas County's
claims are barred by laches; (3) Dallas County's actions violate the due process clause of
the United States Constitution and corresponding provisions in the Texas Constitution; and
(4) Dallas County's actions violate chapter 27, article IV, section 13(B)(4) of the Dallas City
Code.

 On January 6, 1995, Dallas County filed suit against Barua to collect delinquent
ad valorem taxes on the property in question. On March 21, 1995, the Urban
Rehabilitation and Standards Board (URSB) of the City of Dallas issued an order that the
building on this property be demolished. Barua requested a review of the demolition order,
and the URSB heard the appeal May 16, 1995. The URSB affirmed its previous demolition
order. 

 On June 15, 1995, Barua filed suit in district court against the City of Dallas for
injunctive relief, damages, and an appeal of the demolition order. The trial court issued a
temporary order restraining the City of Dallas from proceeding with the demolition of the
property. On June 24, 1995, the trial court entered an agreed temporary injunction and set
the case for trial. Barua dismissed his claims against the City of Dallas September 16,
1997. On November 5, 1997, Barua again filed suit against the city for a temporary
restraining order and a temporary injunction. The trial court again entered a temporary 
order restraining the City of Dallas from acting on the May 16, 1995, order of demolition. 
The November 5 order expired after an agreed order for continuance was entered
November 19, 1997. No further action is recorded regarding the demolition. On March 27,
1998, more than 120 days after the expiration of the November 5, 1997, restraining order,
the City of Dallas demolished the property. 

 On August 3, 1998, Dallas County added to its lawsuit to collect delinquent
ad valorem taxes the request for recovery of the cost of demolition. Final judgment for the
taxes, cost of demolition, penalties, interest, attorney's fees, and foreclosure of the liens
was rendered October 26, 1998. The trial court then issued an order to sell the property,
and the Dallas County Sheriff scheduled the sale for January 5, 1999.

 On or about January 5, 1999, Barua filed bankruptcy, seeking protection from the
foreclosure. The bankruptcy court dismissed the case without prejudice September 23,
1999. The court approved the trustee report, discharged the trustee, and closed the case
February 28, 2000. 

 According to a December 22, 1998, title abstract to the property, a new creditor was
discovered. On November 30, 2000, Dallas County filed a petition under Section 33.56 of
the Texas Tax Code to vacate the October 26, 1998, judgment. (1) Dallas County then added James Wirz, P.C., as a defendant to its lawsuit and subsequently dismissed him
after receiving a disclaimer of interest from Wirz.

 On July 3, 2001, Barua filed his first amended answer and counterclaim. The trial
court dismissed his counterclaim August 29, 2001, and granted Dallas County's motion for
summary judgment September 7, 2001.

 In his first point of error, Barua contends the trial court erred in granting Dallas
County's motion for summary judgment because Dallas County's claims are barred by
waiver. 

 Summary judgment is appropriate when the moving party establishes as a matter
of law that no genuine issues of material fact exist. Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). In this case, Barua first moved
for summary judgment by asserting the affirmative defenses of waiver and laches,
contending Dallas County's claims were barred by waiver and laches, and that Dallas
County violated his due process rights. After the trial court denied Barua's motion for
summary judgment, Dallas County sought affirmative relief on all of its claims. In response
to Dallas County's motion, Barua did not urge contrary facts, but re-urged his affirmative
defenses of waiver and laches, and that Dallas County violated his due process rights. 

 Summary judgment for a defendant is proper when such defendant negates at least
one element of each of the plaintiff's theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). When reviewing a summary judgment, we take as true all
evidence favorable to the nonmovant. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999). We indulge every reasonable inference and resolve any doubt in the
nonmovant's favor. Id. On appeal, the movant still bears the burden of showing that there
is no genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. Id. 

 In support of its motion for summary judgment, Dallas County filed affidavits
showing: (1) Barua owned the property on January 1 of each year for which Dallas County
sought to recover; (2) the taxes, miscellaneous liens, statutory penalties and interest,
statutory collection fees, attorney's fees, court costs, and other costs of suit had accrued
on and against the property and were delinquent; (3) the property is located in Dallas
County and is within the City of Dallas and the Dallas Independent School District, and all
requirements of law were complied with by the appropriate officials. Barua did not present
evidence contradicting these affidavits. Rather, he raised affirmative defenses. Summary
judgment is proper if the nonmoving party has not raised a question of fact on each
element of any affirmative defense relied on to oppose the motion for summary judgment. 
See Martinez, 941 S.W.2d at 911. 

 Waiver is the intentional relinquishment of a known right, or intentional conduct
inconsistent with claiming that right. Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d
35, 37 (Tex. 1987). The law on waiver is well established. "A party's express renunciation
of a known right can establish waiver. Silence or inaction, for so long a period as to show
an intention to yield the known right, is also enough to prove waiver." Tenneco Inc. v.
Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996) (citation omitted). 

 Waiver is largely a question of intent, and in examining implied waiver, the intent
must be clearly demonstrated by facts and circumstances. Motor Vehicle Bd. v. El Paso
Indep. Auto. Dealers Ass'n, 1 S.W.3d 108, 111 (Tex. 1999). There can be no waiver
unless so intended by one party and so understood by the other. Loggins v. Gates, 301
S.W.2d 525, 527 (Tex. Civ. App.-Waco 1957, writ ref'd n.r.e.). Waiver by implication
should not be inferred contrary to the intention of the party whose rights would be
injuriously affected thereby, unless the opposite party has been misled to his or her
prejudice. Cox v. Bancoklahoma Agri-Service Corp., 641 S.W.2d 400, 404 (Tex.
App.-Amarillo 1982, no writ). 

 Waiver may, of course, be established as a matter of law. Motor Vehicle Bd.,
1 S.W.3d at 111. Barua contends Dallas County waived its right to renew its suit. He
contends by failing to move to vacate the judgment and re-urge its case for two years, 
Dallas County abandoned its claims. Barua contends that the right of Dallas County was
to vacate the judgment and that this was a right known to Dallas County under Tex. Tax
Code Ann. § 33.56 (Vernon 2001). Barua contends that, by taking no action to vacate the
judgment from October 26, 1998 until November 30, 2000, Dallas County showed its
intention to yield the known right. 

 The evidence provided in Dallas County's motion for summary judgment shows that,
in January 1999, Barua filed for bankruptcy and the case was not dismissed by the
bankruptcy court until September 1999. The record shows Dallas County did not learn that
a party needed for a just adjudication was missing until examination of the title abstract in
December 1998. In January 1999, Barua filed for bankruptcy and remained in bankruptcy
court until the court dismissed his case in September 1999. Just over a year later, on
November 30, 2000, Dallas County filed a petition to vacate the judgment. 

 Under Section 33.56, when the trial court vacates the judgment, the delinquent tax
suit is revived and the taxes, penalties, interest, and attorney's fees and costs, and the
liens securing them, are reinstated. Tex. Tax Code Ann. § 33.56(f)(3), (4). Section 33.56
places no time limits on seeking an order vacating the judgment. Section 33.05 of the
Texas Tax Code prohibits the filing of a suit to collect a tax on real property that has been
delinquent more than twenty years. Tex. Tax Code Ann. § 33.05(a)(2) (Vernon 2001). 
Dallas County sought to vacate the judgment just over a year after the dismissal of the
bankruptcy action and well within the statute of limitations of collecting delinquent taxes. 
Barua failed to raise a fact issue on his affirmative defense of waiver because Dallas
County was not silent or inactive for so long a period as to show an intention to yield the
known right. See Tenneco Inc., 925 S.W.2d at 643.

 Barua also contends Dallas County waived its right to collect the cost of demolishing
the property because the demolition order entered by the URSB in 1995 gave Barua 120
days to demolish, and when he did not, the City of Dallas waited until 1998 to demolish the
property. Barua contends that, by taking no action from 1995 to 1998, the City of Dallas
waived its right to demolish the property. However, Dallas County's motion for summary
judgment evidence clearly shows that the order to demolish was affirmed by the URSB in
May 1995 and that there were court orders restraining the City of Dallas from demolishing
the property in effect until November 1997. The City of Dallas then demolished the
property on March 27, 1998, more than 120 days after the termination of the final
restraining order. At most, the period of inaction or silence by the City of Dallas was just
over 120 days from the termination of the orders restraining demolition and the time of
demolition. This period of inactivity was not so long a period as to show an intention to
yield the City of Dallas' right to act on the demolition order. See id. The original demolition
order gave Barua ninety days to vacate the buildings and then an additional thirty days to
demolish them, and if he did not comply, then the City of Dallas was authorized to have the
buildings demolished and assess Barua the cost.

 Because Barua did not raise a fact issue on his affirmative defense of waiver, we
hold the trial court did not err in granting summary judgment against him. See Martinez,
941 S.W.2d at 911.

 In his second point of error, Barua contends the trial court erred in granting Dallas
County's motion for summary judgment because of his affirmative defense of laches. To
prove the affirmative defense of laches, or stale demand, the defendant must show that
the plaintiff delayed asserting its legal or equitable rights and that such delay was
unreasonable, and that any change in the defendant's position, to its detriment, caused by
the delay, was made in good faith. See Urban Elec. Servs., Inc. v. Brownwood Indep. Sch.
Dist., 852 S.W.2d 676 (Tex. App.-Eastland 1993, no writ), citing Rogers v. Ricane Enters.,
Inc., 772 S.W.2d 76, 80 (Tex. 1989). 

 Barua contends that, because the City of Dallas waited from 1995 to 1998 before
demolishing his property, he, in reliance on this inaction, made improvements to his
property and started paying his taxes to the best of his ability, believing the government
would no longer demolish his property. He contends, therefore, this delay by the City of
Dallas, in exercising its right to demolish, was unreasonable and that he took a position to
his financial detriment because of the delay. 

 Although the URSB did affirm its previous order to demolish in May 1995, the record
clearly shows Barua sought and obtained a series of temporary orders preventing the City
of Dallas from demolishing the property. The City of Dallas was under court orders from
June 1995 until November 1997 restraining it from demolishing the property. Once the
final restraint order expired, the City of Dallas demolished the property in March 1998. 
Clearly, the City of Dallas did not delay in asserting its legal or equitable rights. For almost
the entire period of time, from issuance of the order to demolish to the demolition, Barua
legally prevented the City of Dallas from carrying out the order to demolish. It cannot be
said that waiting over 120 days from the date of the lifting of the final restraining order to
demolish the property presented an unreasonable delay by the City of Dallas in exercising
its legal right. 

 Further, Barua failed to raise a fact issue under the second prong of the defense of
laches that any change in his position to his detriment caused by the delay was made in
good faith. For most of the time from June 1995 until November 1998, Barua legally
prevented the City of Dallas from acting on its demolition order. Barua's actions to prevent
the demolition show he did not, in good faith, rely on a belief the City of Dallas was merely
failing to act on the demolition order or had abandoned its desire to demolish the property,
thus inducing Barua to expend money to improve the property and pay the taxes. Barua's
affidavit, attached to his response to the motion for summary judgment, stated: "[a]fter the
ninety days were up, the City still didn't destroy my buildings. I was surprised. I thought
they had changed their minds, or at least that I would hear more from them if they decided
to destroy the buildings after all." However, in its motion for summary judgment, Dallas
County attached certain court documents and orders from the court case where Barua had
sued it. The first order, dated June 15, 1995, about a month after the URSB's order to
demolish the buildings, ordered the City of Dallas and its agents to "desist and refrain from
proceeding or continuing with in any manner the demolition of the property of Plaintiff
known as 2727 Kings Road, . . . ." Although Barua states in his brief that, in reliance on
the City of Dallas' inaction, he made improvements to the property, he fails to cite to the
record showing proof of these improvements, and a review of his evidence does not show
any improvements or expenditures during this period. All the money expended on
improvements appears to have been expended between 1993 and 1995. Barua failed to
raise a fact issue as to either of the elements of his defense of laches. 

 Because Barua failed to raise a fact issue as to his defense of laches, we need not
reach Dallas County's contention that this defense is inapplicable to it. See City of Fort
Worth v. Johnson, 388 S.W.2d 400, 403-04 (Tex. 1964). We hold the trial court did not err
in granting Dallas County's motion for summary judgment.

 In his third point of error, Barua contends the demolition lien against his property
arose from an order for demolition that was executed illegally and in violation of his due
process rights under the United States Constitution. 

 The Fourteenth Amendment prohibits the government from depriving "any person
of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. 
Barua concedes in his brief that he received notice of the hearings held by the City of
Dallas regarding the proposed demolition of his buildings and that he attended most if not
all such hearings. Barua's complaint is not that the initial notice was not adequate to
protect his due process rights, but rather that he received no further notice to demolish the
building after the first order from the URSB. He contends that, by waiting from 1995 to
1998 before demolishing the building, without giving him further notice, the City of Dallas
violated his due process rights. In his affidavit, Barua states he believed he would receive
notice of demolition if the City of Dallas planned to demolish the building. However, the
notice of demolition given to Barua does not state he would be given notice of the City of
Dallas' intention to demolish. Rather, the notice says:

 If you do not complete the demolition or clearance of the premise(s) within
the time above indicated [ninety days to vacate and an additional thirty to
demolish], the city will arrange to have this work done, and the expense of
that demolition performed under contract with the city will constitute a lien on
the real property . . . . 


 Based on the lawsuit against the City of Dallas filed by Barua, and the temporary
restraining orders sought and received by him to prevent the city from demolishing his
building from June 1995 until November 1997, Barua knew the City of Dallas could not
demolish his building during this time. The City of Dallas did not simply fail to act on this
notice to demolish for years and then suddenly and unexpectedly decide to enforce it. 
Rather, the City of Dallas demolished the property more than 120 days after the final
temporary restraining order expired. This period of time gave Barua the 120 days granted
in the URSB's order to demolish before the City of Dallas took action. Barua was fully
aware of the City of Dallas' demand that the property be demolished and prevented the
City of Dallas from enforcing its order for two years and five months. There is no indication
the City of Dallas was required to give another notice after the termination of the final
temporary restraining order, and Barua does not complain the original notice given by the
City of Dallas failed to provide adequate notice or violated his due process rights. 

 In Barua's final point of error, he contends the City of Dallas demolished his building
in violation of chapter 27, article IV, section 13(B)(4) of the Dallas City Code, thereby
conclusively negating an element of the Dallas County action of foreclosure and the
demolition lien. However, a review of Barua's motion for summary judgment, motion for
partial summary judgment, and response to plaintiff's motion for summary judgment shows
he never complained to the trial court that the notice of the demolition hearing violated
chapter 27, article IV, section 13(B)(4) of the Dallas City Code. In order to present a
complaint for appellate review, Barua must show he made the complaint to the trial court. 
Tex. R. App. P. 33.1. Barua failed to properly preserve this complaint for appellate review.


 We overrule each of Barua's points of error and affirm the trial court's judgment.





 Donald R. Ross

 Justice

 

Date Submitted: January 17, 2003

Date Decided: March 6, 2003

1. Tex. Tax Code Ann. § 33.56 (Vernon 2001) provides as follows:


 (a) If, in a suit to collect a delinquent tax, a court renders a
judgment for foreclosure of a tax lien on behalf of a taxing unit, any taxing
unit that was a party to the judgment may file a petition to vacate the
judgment on one or more of the following grounds: 


 (1) failure to join a person needed for just adjudication
under the Texas Rules of Civil Procedure, including a taxing unit
required to be joined under Section 33.44(a); 


 (2) failure to serve a person needed for just adjudication
under the Texas Rules of Civil Procedure, including a taxing unit
required to be joined under Section 33.44(a);


 (3) failure of the judgment to adequately describe the
property that is the subject of the suit; or


 (4) that the property described in the judgment was subject
to multiple appraisals for the tax years included in the judgment. 


 (b) The taxing unit must file the petition under the same cause
number as the delinquent tax suit and in the same court.


 (c) The taxing unit may not file a petition if a tax sale of the
property has occurred unless:


 (1) the tax sale has been vacated by an order of a court; 


 (2) the property was bid off to a taxing unit under Section
34.01(j) and has not been resold; or


 (3) the tax sale or resale purchaser, or the purchaser's
heirs, successors, or assigns, consents to the petition.


 (d) Consent of the purchaser to a petition may be shown by: 


 (1) a written memorandum signed by the purchaser and
filed with the court;


 (2) the purchaser's joinder in the taxing unit's petition; 


 (3) a statement of the purchaser made in open court on the
record in a hearing on the petition; or 


 (4) the purchaser's signature of approval to an agreed order
to grant the petition.


 (e) A copy of the petition must be served in a manner authorized
by Rule 21a, Texas Rules of Civil Procedure, on each party to the delinquent
tax suit. 


 (f) If the court grants the petition, the court shall enter an order
providing that:


 (1) the judgment, any tax sale based on that judgment, and
any subsequent resale are vacated; 


 (2) any applicable tax deed or applicable resale deed is
canceled; 


 (3) the delinquent tax suit is revived; and 


 (4) except in a case in which judgment is vacated under
Subsection (a)(4), the taxes, penalties, interest, and attorney's fees
and costs, and the liens that secure each of those items, are
reinstated.