**AIR PARK–DALLAS ZONING COM-MITTEE, Appellant/Cross–Appellee,**

v.

**CROW–BILLINGSLEY AIRPARK, LTD., Crow–Billingsley Berkeley, Ltd., Henry Billingsley, Lucy Billingsley, Appellees/Cross–Appellants.**

**No. 05–01–01689–CV.**

Court of Appeals of Texas, Dallas.

July 16, 2003.

David W. Elrod, Barbara L. Wohlrabe and Elizabeth L. Reding, Rochelle, Elrod, Hutcheson, LLP, Dallas, for Appellant.

Tod B. Edel and Christopher John Akin, Carrington Coleman, Sloman & Blumenthal, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, RICHTER and MALONEY.[1]

## OPINION

Opinion By Justice RICHTER.

The issues in this case surround the interpretation and application of certain restrictive covenants that appertain to all individual lots in a special use subdivision, namely a residential airpark. The cause was tried to the court below without a jury, and both parties appeal. The issues presented by both parties require this court to resolve jurisdictional questions, interpret the restrictive covenants at issue, resolve questions of statutory damages and usury, and decide issues concerning attorneys' fees. We affirm in part, and reverse and render in part.

## I. Background

Air Park–Dallas began in 1969, when Milton and Henry Noell decided to create a residential airpark for "people who like to fly airplanes" on their property in southwestern Collin County. As the north Dallas area grew over time, the population spilled over into southern Collin County. The rapid growth in the area north of Dallas, including the situs of Airpark, was that of affluent residential subdivisions and strategically placed commercial centers.

As a consequence, wealthy developers began to eye the jewel of the partially developed Air Park–Dallas for investment purposes. Ultimately in 1983, investors Henry and Lucy Billingsley persuaded Milton Noell to sell one half of his interest in Air Park–Dallas, including one half of an undivided interest in all of the common areas, for three million dollars. The earlier plan to further develop the community as a residential airpark was abandoned. It is undisputed that the Billingsleys purchased their interest solely for investment purposes. There is evidence in the record that Henry Billingsley would turn much of the subdivision, including the runway, into a commercial area if he could unilaterally make that decision. However, before the Billingsley sale, several aviators purchased lots in the subdivision.

To facilitate the Noells' earlier goal of a residential airpark, each individual lot carries certain restrictive covenants that run with the land. These covenants purport to retain the residential airpark character of the community and provide for a zoning committee to govern land use in the subdivision. It is against this backdrop that we

**1.** The Honorable Frances J. Maloney, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

find the battle lines drawn between the investors and the aviator residents of the subdivision.

After Henry and Lucy Billingsley's initial purchase from Milton Noell, the Billingsleys formed two Billingsley partnership entities, Crow–Billingsley Airpark, Ltd. and Crow–Billingsley Berkeley, Ltd., which are parties before the Court. In 1984, 1985 and 1986, eight of Henry Billingsley's lots were transferred to Crow–Billingsley Berkeley, LTD. Crow–Billingsley Airpark, LTD is the operational partnership that directs the day-to-day activities of the partnership property. The partnership interests are aligned with the individual Billingsley parties, and therefore all will be collectively referred to as the "Billingsley Parties." Since the Billingsley initial purchase in 1983, the Billingsley parties have acquired additional lots as they have become available. Out of a total of 68 residential lots, the Billingsley Parties own 32 lots. They also own three business lots near the runway.

## II. Jurisdiction

As a preliminary matter, the Billingsley Parties assert that this Court does not have jurisdiction to consider this appeal. The Air Park–Dallas Zoning Committee ("Zoning Committee") addresses this contention in its first issue.

### Facts

After the case was tried to the court, judgment was entered on July 23, 2001. Trial counsel for the Zoning Committee filed a motion to withdraw as attorney of record, which was granted on July 25, 2001. Thereafter, the law firm ROCHELLE ELROD HUTCHESON, LLP ("REH") filed a motion for new trial on August 22, 2001, on behalf of the Zoning Committee. REH was purportedly retained to handle the appeal. The Billingsley Parties filed a Rule 12 motion for the new attorneys to show they had authority to represent the Zoning Committee. TEX.R. CIV. P. 12. A two-day evidentiary hearing was held and the court concluded that REH had not met its burden of proof to show proper authority. On October 2, 2001, the court signed an order ruling that REH could not appear on behalf of the Zoning Committee and ordered all pleadings filed by REH, including the motion for new trial, stricken from the record. The effect of striking the motion for new trial rendered the Zoning Committee's October 22, 2001, notice of appeal being filed more than 30 days after judgment was entered and, therefore, untimely. If the motion for new trial had not been stricken, the notice of appeal would have been timely.

### Applicable Law

Generally, a notice of appeal must be filed within 30 days after the judgment is signed to be considered timely. TEX. R.APP. P. 26.1. If a motion for new trial is timely filed, the notice of appeal must be filed within 90 days after the judgment is signed. TEX.R.APP. P. 26.1(a)(1).

Any party may file a motion to show authority. TEX.R. CIV. P. 12. The challenged attorney has the burden of proof to show sufficient authority to represent the client. *Id.* If sufficient authority is not shown, the attorney is not permitted to appear in the cause. *Id.* Further, if no authorized person appears, the court shall strike the pleadings on file. *Id.*

### Application of Law to Facts

▮▮▮ Rule 12 provides that the motion may be heard at any time before the parties have announced ready for trial. *Id.* Although Rule 12 does not specifically contemplate the situation here—where a new attorney appears after trial to file a motion for new trial—case law supports the proposition that a Rule 12 motion may be considered at the first available opportunity

after new or different counsel attempts to appear as attorney of record. *See Angelina County v. McFarland,* 374 S.W.2d 417, 423 (Tex.1964) (Rule 12 applies to challenges in the trial court or the court in which the action[2] is commenced); *Sloan v. Rivers,* 693 S.W.2d 782, 784 (Tex.App.-Ft. Worth 1985, no writ) (Rule 12 properly considered in appellate court where case is an original proceeding). The purpose behind enactment of the rule also weighs in favor of allowing Rule 12 challenges as soon as practicable after new or different counsel attempts to appear in a case. "[T]he rule's purpose is to discourage and cause dismissal of suits brought without authority. . . ." *Sloan,* 693 S.W.2d at 784; *see also Mobile Homes of Am., Inc. v. Easy Living, Inc.,* 527 S.W.2d 847, 848 (Tex.Civ.App.-Ft. Worth 1975, no writ).

The Billingsley Parties assert that the case *Rodriquez v. Texas Farmers Insurance Co.* is factually analogous to the instant case. 903 S.W.2d 499 (Tex.App.-Amarillo 1995, writ denied). The Zoning Committee correctly points out that the factually analogous portions of that opinion were not necessary to the resolution of that case and were, therefore, dicta. Accordingly, that part of *Rodriquez* has no binding precedential value. *E.g., Lester v. First Am. Bank,* 866 S.W.2d 361, 363 (Tex. App.-Waco 1993, writ denied) (discussing stare decisis and dicta). However, we do believe that opinion is instructive as to what at least one Texas trial court has done when confronted with the same issue as presented in this case. In *Rodriquez,* the plaintiff Ortegas obtained a default judgment against the defendant Rodri-

quezes. 903 S.W.2d at 502. Thereafter, pursuant to a policy of insurance, an insurance company provided counsel to the Rodriquezes and instructed counsel to file an answer and a motion for new trial. *Id.* The attorney filed the answer, but refused to file the motion for new trial asserting that it was not in the Rodriquezes' best interests.[3] *Id.* Thereafter, the insurance company provided another counsel and, at its request, filed a motion for new trial. *Id.* The Ortegas' attorney, armed with affidavits of the Rodriquezes, filed a Rule 12 motion. *Id.* The trial court granted the Rule 12 motion and struck the motion for new trial. *Id.* Although the insurance company initially appealed this determination, it later abandoned that appeal. *Id.* at 502 n. 3.

As the court in *Sloan v. Rivers* stated: "As would be expected from the very nature of [Rule 12], there has not been developed a large body of precedent as to the application of it's provisions." 693 S.W.2d at 784. Finally, concerning when the motion can be heard, we note Rule 12 uses the permissive "may," as opposed to the mandatory "shall" language. *See* Tex. Gov't Code Ann. § 311.016(1) (Vernon 1998). "The motion *may* be heard and determined at any time before the parties have announced ready for trial. . . ." Tex.R. Civ. P. 12 (emphasis added).

▪ In accordance with the foregoing, we conclude that a Rule 12 motion may be properly brought when a new and different attorney attempts to appear as attorney of record purporting to advance a motion for new trial after the trial has concluded.

---

**2.** The trial may be an "action," and an appeal may be another "action." An " 'action' continues at least until the expiration of the trial court's plenary power over the proceeding." *Thomas v. Oldham,* 895 S.W.2d 352, 356 (Tex. 1995) (identifying the issue, but expressing no

opinion as to whether an "action" includes an appeal).

**3.** Rodriguezes had assigned their claims under the policy of insurance to the Ortegas in exchange for the Ortegas's promise not to execute on the default judgment.

Our resolution of this issue does not offend the mandate contained in Rule 12 that the trial shall not be unnecessarily delayed or continued for the hearing on the Rule 12 motion. *Id.*

We review the trial court's granting of a Rule 12 motion for abuse of discretion. *City of San Antonio v. River City Cabaret, Ltd.,* 32 S.W.3d 291, 293 (Tex. App.-San Antonio 2000, pet. denied). *But see State v. Evangelical Lutheran Good Samaritan Soc'y,* 981 S.W.2d 509, 511 (Tex.App.-Austin 1998, no pet.) (review of a Rule 12 determination is *de novo).* We defer to the trial court on factual findings and review legal conclusions *de novo. River City Cabaret,* 32 S.W.3d at 293; *Gulf Reg'l Educ. Television v. Univ. of Houston,* 746 S.W.2d 803, 806 (Tex.App.-Houston [14th Dist.] 1988, writ denied).

We turn now to the question whether or not the trial court abused its discretion in finding that REH failed to meet its burden of proof to establish that it had sufficient authority to act as counsel for the Zoning Committee. During the two day evidentiary hearing on the Rule 12 motion, conflicting evidence indicated that REH was initially retained by the actions of certain individual members of the Zoning Committee. That initial retention was not validly authorized by an official Zoning Committee action because there was no notice to all Zoning Committee members, there was no meeting, there was no vote and there were no contemporaneous minutes.[4] However, on the night after the first day of the evidentiary hearing, a majority of the Zoning Committee members had a meeting wherein the prior unautho-rized retention of REH was ratified by a unanimous vote. That meeting was valid because there was notice,[5] there was a meeting, there was a vote, and contemporaneous minutes were taken.

The Zoning Committee is an unincorporated association. *In re Crow–Billingsley Air Park,* 98 S.W.3d 178, 178 (Tex. 2003) (law of the case); *see also Cox v. Thee Evergreen Church,* 836 S.W.2d 167 (Tex.1992) (describing legal status of unincorporated associations in depth). An unincorporated association can ratify the conduct of one of its members. *Pitman v. Lightfoot,* 937 S.W.2d 496, 527 (Tex.App.-San Antonio 1996, writ denied) (citing *Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598 (Tex. App.-Houston [1st Dist.] 1991, no writ)). Generally, in regard to corporations, partnerships, governmental entities, agency relationships, and deeds, a ratification relates back to the initial unauthorized action unless to do so would harm intervening rights of third persons. *See Tyler v. L.L. Jester & Co.,* 97 Tex. 344, 78 S.W. 1058, 1062 (1904) (city council); *Cleveland v. Heidenheimer,* 92 Tex. 108, 46 S.W. 30 (1898) (partnerships); *American Nat'l Bank v. Cruger,* 91 Tex. 446, 44 S.W. 278 (1898) (agency); *Brock v. Jones,* 16 Tex. 461, 465 (1856) ("It is a familiar maxim that ratification has retroactive efficacy, and relates back to the inception of the transaction...."); *Great Plains Life Ins. Co. v. First Nat'l Bank,* 316 S.W.2d 98, 106 (Tex.Civ.App.-Amarillo 1958, writ ref'd n.r.e.) (corporations). On the foregoing authorities, we conclude that an unincorporated association's ratification of an unau-

---

4. The Zoning Committee secretary, Mr. Hammond, created "official" minutes of this purported meeting in open court during the Rule 12 evidentiary hearing. It was within the discretion of the trial court to disregard these after the fact "minutes."

5. David Noell, a permanent Zoning Committee member, did not attend this meeting. Notice was taped to his door and left on his answering machine one hour prior to the meeting. The Zoning Committee by-laws simply require notice to all members.

thorized act of one of its members has retroactive effect.

In this case, there is no harm to intervening rights of third parties. Therefore, the ratification of the retention of REH relates back to the initial unauthorized retention that occurred prior to the filing of the motion for new trial in this case. REH was authorized to appear on behalf of the Zoning Committee. Therefore, the trial court abused its discretion in granting the Rule 12 motion and in striking the Zoning Committee's motion for new trial. *River City Cabaret,* 32 S.W.3d at 293.

Finally, we reject the position of the Billingsley Parties that the motion for new trial was a "nullity" that did not extend the trial court's plenary jurisdiction. In support of this proposition, the Billingsley Parties rely on the case *Hager v. State ex. rel. TeVault,* 446 S.W.2d 43, 51 (Tex.Civ. App.-Beaumont 1969, writ ref'd n.r.e.). The Billingsley Parties assert that since the motion for new trial was unauthorized at the time it was filed and therefore a nullity, the trial court's plenary jurisdiction expired and the later filed notice of appeal was untimely, thereby depriving this Court of jurisdiction to consider this appeal. However, if this Court were to validate that analysis, then the trial court would have been without jurisdiction to consider the Rule 12 motion itself. Furthermore, *Hager* did not address Rule 12 or the relation-back doctrine. *Hager* held that a notice of appeal was a nullity when it was not approved by a majority vote of disinterested city council members. *Id.* at 51.

We conclude the trial court erred in granting the Rule 12 motion and in striking the motion for new trial. Because the Rule 12 motion should not have been granted and the motion for new trial should not have been stricken from the record, the notice of appeal in this case was timely filed. Accordingly, this Court

has jurisdiction to consider this appeal. We sustain the first issue of the Zoning Committee: that the trial court abused its discretion in striking the motion for new trial.

## III. Restrictive Covenants

### Facts

Each individual lot in Air Park–Dallas is burdened with restrictive covenants. Relevant to the positions of the parties are restrictive covenants 6.a., 13, 15, and 16. These covenants provide in pertinent part:

6.a. No building, fence or other structure shall be commenced, erected or maintained on any of the lots or tracts unless same shall first have been submitted to and approved in writing by the Zoning Committee composed of M.J. Noell, D.W. Noell and three members to be elected from the lot owners by a majority vote of same every two years. In the event of death or resignation of any member, a replacement may be appointed to said committee by the remaining members.

13. No lot in this subdivision shall be resubdivided unless prior approval is obtained in writing from the Zoning Committee and no lot can be resold until the sales contract is first offered to the Zoning Committee with a right of purchase for the same price as offered on the contract.

15. The Zoning Committee will act as a governing body with legal authority to make those rulings necessary or call for an election to protect the best interests of the community until an incorporated government can be established.

16. These covenants and restrictions are to run with the land and shall be binding on all parties and all persons claiming under them until revoked or modified in whole or in part by a three-

fourths majority vote of the then owners of the real property therein, said vote to be on the basis of one vote per lot therein. (A person owning half a lot shall be entitled to ½ vote, a person owning five lots shall be entitled to five votes, etc.)

Pursuant to restrictive covenant 15, the Zoning Committee enacted certain by-laws to effectuate the intent and purposes of the restrictive covenants. Relevant to our analysis are two of the by-laws. By-laws XI and XII provide in pertinent part:

By-law XI. If any lot owner shall violate or fail to comply with any of the covenants and restrictions contained in his deed or contract pertaining to Air Park–Dallas, the Zoning Committee may suspend that lot owner's right to participate in any elections called by the Zoning Committee under the provisions of article 6.a or article 15 of said covenants and restrictions....

By-law XII. The Zoning Committee may take such other actions they deem necessary to protect the best interests of the community under the authority granted them by the Air Park–Dallas covenants and restrictions.

### Interpretation of Restrictive Covenants and By-laws

■■■ We review the trial court's interpretation of a restrictive covenant de novo. *Brooks v. Northglen Ass'n*, 76 S.W.3d 162, 169 (Tex.App.-Texarkana 2002, pet. granted). The rules of contract construction govern the interpretation of restrictive covenants. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998). Whether restrictive covenants are ambiguous is a question of law. *Id.* Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement. *Id.* Like a

contract, covenants are unambiguous as a matter of law if they can be given a definite or certain legal meaning. *Id.* On the other hand, if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous. *Id.*

■■■ Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous. *Hodas v. Scenic Oaks Property Ass'n*, 21 S.W.3d 524, 528 (Tex.App.-San Antonio 2000, pet. denied). Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meaning. *Id.* at 530. We liberally construe an unambiguous restrictive covenant to give effect to its purpose and intent. Tex. Prop.Code Ann. § 202.003(a) (Vernon 1995); *Hodas*, 21 S.W.3d at 528.

### Application of Law to the Facts

In this case, the restrictive covenants are not ambiguous. Although the parties differ over the interpretation of the restrictions, we conclude that they can be given a definite and certain legal meaning. Although the covenants do not directly address all of the contentions of the parties, where the covenants do speak, there is no ambiguity. To construe the provisions in the fashion advanced by the appellant would require this court to impermissibly enlarge, extend, or stretch the literal terms of the covenants at issue. This we decline to do.

■■■ In its second and third issues, the Zoning Committee urges the trial court erred when it declared that Henry and Lucy Billingsley could run as candidates in a Zoning Committee election despite the fact that the trial court ruled that certain of their lots' right to vote were suspended for noncompliance with the restrictive covenants and ancillary by-laws promulgated

by the Zoning Committee. The covenants clearly give each lot one vote.[6]

The trial court ruled that pursuant to By-law XI, for any individual lot not in compliance with the restrictions or by-laws, that lot's vote would not be exercisable until any disability was removed.[7] However, if an individual owned several lots and the voting rights and concomitant ability to run as a candidate pursuant to a particular lot were suspended because of a violation of the covenants or by-laws, it does not follow that the individual would be precluded from voting his or her other lots that are in compliance with the covenants and by-laws or that an individual with some, but not all, lots in compliance would be denied the opportunity to run as a candidate. In other words, a voting disability pertains only to the lot affected by noncompliance. If any particular lot is in compliance, the lot owner's ability to vote that lot or run as a candidate in a Zoning Committee election is unaffected by the noncompliance of any other lots that person may happen to own. The foregoing conclusions follow from the plain language of the covenants and the by-laws. We overrule the Zoning Committee's issues two and three.

■ Next, in issues four through six, the Zoning Committee urges the trial court erred in failing to declare that the Billingsley Parties, by virtue of having purchased an undivided one-half interest in Air Park–Dallas from Milton Noell in 1983, have stepped into the role of an Air Park–Dallas "developer," and thus, their interests are represented by the remaining permanent Zoning Committee member David Noell. The Committee's argument further postulates that since the "developers" are represented by a permanent Zoning Committee member, the Billingsleys are precluded from running for the three remaining membership slots that are reserved for the "lot owners."

We reject the totality of the "developer" and "lot owner" argument and analysis. The term developer lots does not appear in the restrictive covenants or the by-laws. Although lot owners are mentioned, they are not mentioned in the context of the argument advanced by the Zoning Committee. The concept of a distinction between developers and lot owners is notably absent in the covenants and by-laws. Because this Court will not enlarge, extend, or stretch the plain meaning of the covenants and the by-laws, we decline to adopt the construction advanced by the Zoning Committee. We overrule the Zoning Committee's issues four through six.

The seventh issue raised by the Zoning Committee concerns the application of the covenant concerning the right of first refusal. The trial court held that lots sold to the Billingsley business entities from the Billingsley individuals in 1983, 1984 and 1985 were transferred in violation of the Zoning Committee's right of first refusal contained in restrictive covenant 13. As such, those lots' voting rights were properly suspended until they were resold in compliance with restrictive covenant 13. We agree that the terms of the covenants and by-laws support this construction. However, the Zoning Committee argues that the trial court erred when it failed to

---

**6.** The parenthetical to restrictive covenant 16 specifically provides that if an individual owns one-half of a lot, he or she would ordinarily get one-half a vote in a Zoning Committee election, and if an individual owns five lots, he or she would ordinarily have five votes.

**7.** The Billingsley Parties challenge this conclusion in their cross-appeal. We reject that argument as discussed later in this opinion.

declare that any such future sale must be bona fide, or in the alternative, when it failed to order that the sale must be consummated at the same contract terms as existed in 1983, 1984 and 1985.

■ Concerning the request to hold that all future sales must be bona fide, the issue is not ripe for our determination, as there is no present, actual controversy between the parties. Additionally, this Court is prohibited from rendering an advisory opinion. TEX. CONST. art. II § 1; see Perry v. Del Rio, 66 S.W.3d 239, 248–51 (Tex.2001) (ripeness); Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex.1993) (no advisory opinions).

■ In their original answer and second supplemental answer to the Zoning Committee's counterclaim for specific performance and enforcement of the restrictive covenants, the Billingsley Parties raised the affirmative defenses of laches and limitations. The Zoning Committee claimed that any future sale must be offered on the same terms of over 15 years ago. Actions to enforce restrictive covenants are controlled by a four-year statute of limitations. Malmgren v. Inverness Forest Civic Club, 981 S.W.2d 875 (Tex. App.-Houston [14th Dist.] 1998, no pet.). Under equitable principles, the essential elements of a laches affirmative defense are (1) unreasonable delay in asserting one's legal or equitable rights, and (2) a good faith change of position by another to his detriment because of the delay. Houston Lighting and Power Co. v. City of Wharton, 101 S.W.3d 633, 639 (Tex.App Houston [1st Dist.] 2003, pet. filed); see also Barua v. County of Dallas, 100 S.W.3d 629, 635 (Tex.App.-Texarkana 2003, pet. denied).

■ In this case, no findings of fact or conclusions of law were requested or filed. It is therefore implied that the trial court made all the findings necessary to support its judgment. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); BMC Software Belgium N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.2002). In determining whether some evidence supports the judgment and the implied findings of fact, it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in nature. Worford at 109. The judgment must be affirmed if it can be upheld on any theory that finds support in the evidence. Id.

■ The Billingsley Parties claim that the trial court impliedly found that delay in asserting any right of first refusal from 1983–1985 until suit was filed was unreasonable. Further, the Billingsley Parties assert that implied findings of fact, namely that they made a good faith change of position by paying property taxes during the period in question and by holding the subject properties for investment purposes for the intervening years, are supported by the evidence. We agree that such findings may be implied from the record and they support the judgment of the trial court. We conclude that the implied factual findings support the legal defense of limitations and the equitable defense of laches, and those defenses preclude the Zoning Committee's request for specific performance of the right of first refusal at the contract prices as they existed in 1983–1985.

The Zoning Committee seeks a declaration that each of the eight lots sold in violation of the right of first refusal must be offered to the Committee on an individual basis as opposed to one combined offer for all eight lots. Again, this issue is not ripe and seeks an advisory opinion. Perry, 66 S.W.3d at 248–51; Tex. Ass'n of Bus., 852 S.W.2d at 444. We overrule the Zoning Committee's seventh issue.

In its eighth issue, the Zoning Committee complains that the trial court erred in failing to declare that the Billingsley Parties violated the restrictive covenant 13 prohibition on resubdivision of land without Zoning Committee approval. The City of Plano approached the Billingsley Parties to purchase a narrow strip of land in order to facilitate the widening of a city street. The Billingsley Parties sold the strip to the City for one dollar. We do not need to decide whether the sale was a resubdivision of land, because we conclude that the de minimis transfer of the narrow strip of land to the City of Plano, if it was a resubdivision, was an insubstantial violation of the restrictive covenants. *See Adams v. Owens*, 519 S.W.2d 260, 262 (Tex.Civ.App.-Beaumont 1975, writ ref'd n.r.e.); *Foster v. Bunting*, 19 S.W.2d 784, 789 (Tex.Civ.App.-Fort Worth 1929, no writ). We overrule the Zoning Committee's eighth issue.

### IV. Civil Damages under Property Code § 202.004(c)

■■■ The Zoning Committee complains in their ninth issue on appeal that the trial court erred in failing to·award civil damages pursuant to Texas Property Code section 202.004(c). TEX. PROP.CODE ANN. § 202.004(c) (Vernon 1995). That section of the property code provides: "A court *may* assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." *Id.*(emphasis added). We note that the statutory language used is permissive in nature. The word "may" as used in a statute creates discretionary authority or grants permission or a power. TEX. GOV'T CODE ANN. § 311.016(1). To warrant·reversal as an abuse of discretion, the court's ruling must have been arbitrary or unreasonable without reference to any guiding rules or principles. *BMC Software Belgium*, 83 S.W.3d at 800. In the trial court, both parties prevailed on some issues concerning the restrictive covenants and the by-laws, while losing other issues. As such, we cannot say that the trial court acted arbitrary or unreasonable in denying civil damages under property code section 202.004(c). We overrule the Zoning Committee's ninth issue.

### V. Attorney's fees

■■■ In the tenth issue of the Zoning Committee's appeal and the fourth issue of the Billingsley Parties' cross-appeal, both parties complain that the trial court erred in failing to award attorney's fees pursuant to property code section 5.006. TEX. PROP. CODE ANN. § 5.006·(Vernon 1984). However, in the judgment below, and in the judgment we render, neither side would be considered a "prevailing party." *See id.; Brooks*, 76 S.W.3d at 176. In any event, there is no showing in the record that either side, following entry of judgment, brought the omission of attorney's fees to the attention of the trial court by a motion to amend or correct the judgment or in a motion for new trial. In addition, neither side requested any findings of fact and conclusions of law concerning attorney's fees. We conclude error, if any, has been waived by both the Zoning Committee and the Billingsley Parties. *See WLR, Inc. v. Borders*, 690 S.W.2d 663, 668–69 (Tex. App.-Waco 1985, writ ref'd n.r.e.).

Further, the trial court, acting within its discretion, did not award attorney's fees pursuant to the Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); *see also Sharp v. Hobart Corp.*, 957 S.W.2d 650, 654 (Tex.App.-Austin 1997, no pet.) ("Without findings of fact establishing the basis for the trial court's exercise of discretion, we cannot conclude as a matter of law that the court abused its discretion in declining to award attorney's fees.").

Finally, the Zoning Committee seeks an award of attorney's fees based on its contract claim for mowing assessments. However, as the Billingsley Parties point out, there is no evidence in the record that the breach of contract claim was ever presented to the Billingsley Parties. TEX. CIV. PRAC. & REM.CODE ANN. § 38.002(2) (Vernon 1997). Because there is no evidence of presentment, the trial court did not err in denying attorney's fees on the breach of contract claim. We overrule the tenth issue of the Zoning Committee and the fourth issue of the Billingsley Parties. In so doing, we affirm the determination of the trial court regarding attorney's fees.

## V. Cross-appeal issues

The Billingsley Parties filed a cross-appeal asserting five issues. They assert that the trial court erred: 1) when it determined that the by-laws validly gave the Zoning Committee the power to suspend a lot owner's right to participate in a vote, 2) when the court decided that only the residential, and not the business lots, had the right to vote in Zoning Committee elections, 3) when the court denied the Billingsley Parties' usury claim, 4) when the court denied their claim for attorney's fees, and 5) when the court refused to enforce its judgment. The Billingsley Parties acknowledge that their fifth and final issue is now moot based upon the Texas Supreme Court decision in *In re Crow–Billingsley Air Park, Ltd.*, 98 S.W.3d 178. The fourth issue concerning attorney's fees was resolved above under the general discussion concerning attorney's fees.

In their first issue, the Billingsley Parties assert that By-law XI, which purports to enable the Zoning Committee to suspend the right to participate in a vote in a Zoning Committee election of any lot

deemed to be in violation of the restrictive covenants, was an invalid by-law, as it materially changed the rights and obligations expressly set forth in the restrictive covenants. Relying on restrictive covenant 16, the Billingsley Parties further assert that any rule concerning the suspension of voting rights would need to be approved by a three-fourths majority vote of all lot owners. However, restrictive covenant 15 provides that the committee will "act as a governing body with legal authority to make those rulings necessary ... to protect the best interests of the community." We conclude that restrictive covenant 15 provided sufficient authority for the Zoning Committee to enact the suspension of voting rights by-law. We further conclude that the Zoning Committee need not have obtained a three-fourths majority vote because the restrictive covenants themselves were not revoked or modified as provided in restrictive covenant 16. By-law XI is merely a clarification of the restrictive covenants. We overrule the Billingsley Parties' first issue.

In their second issue, the Billingsley Parties assert that the trial court erred when it decided that only the residential lots, and not the business lots, had the right to vote in a Zoning Committee election. Under the rules of restrictive covenant construction set forth above, we conclude that the plain language of the restrictive covenants does not distinguish between residential lots or business lots when it comes to the voting rights at issue. Although the preamble to the restrictive covenants specifically excepts commercial lots from restrictions 9, 12a, 12b and 14,[8] commercial or business lots are not mentioned or distinguished again. Because the plain language of the voting covenants at issue do not distinguish between business and residential lots, we

---

8. These restrictions pertain to and enforce the    residential nature of all other lots.

conclude that all lots in Air–Park Dallas have the right to vote in Zoning Committee elections. Accordingly, we sustain the second issue of the Billingsley Parties and reverse and render judgment that all lots, including all business lots, have the right to vote on the basis of one vote per lot.

In their third issue, the Billingsley Parties urge the trial court erred when it denied their claim for usury. The usury issue is based on a purported claim by the Zoning Committee for interest due on unpaid mowing assessments. The evidence in the record indicates that Zoning Committee secretary John Hammond created a ledger of past due assessments that purported to assess an 18% interest rate. That ledger was provided to the Billingsley Parties in discovery. The Zoning Committee urged at trial that, since the ledger was not an official Zoning Committee document, it was unauthorized. The stated reasons that the document was not an official authorized Zoning Committee document were that there was no notice to all Zoning Committee members, there was no meeting, there was no vote approving the document, and there were no contemporaneous minutes. In addition, the Zoning Committee asserts that the usurious charge was never actually billed to the Billingsley Parties, that John Hammond made a bona fide error in creating the document, and that Mr. Hammond never intended to communicate the document to the Billingsley Parties. In contrast, the Billingsley Parties urge that Hammond had apparent authority sufficient to hold the Zoning Committee liable for an usurious charge.

■ The Billingsley Parties' usury issue attacks an adverse decision upon which they had the burden of proof. A party attempting to overcome such an adverse finding, as a matter of law, must overcome two hurdles. *Commerce, Crowdus & Can-* *ton, Ltd. v. DKS Constr., Inc.,* 776 S.W.2d 615, 617 (Tex.App.-Dallas 1989, no writ). First, the record must be examined for evidence that supports the court's findings, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the fact finder's answer, then, secondly, the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.*

As stated, in this case there were no findings of fact or conclusions of law entered. Because no findings of fact or conclusions of law were filed, the trial court's judgment implies all necessary supporting fact findings. *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 842 (Tex.2000). In determining whether some evidence supports the judgment and the implied findings of fact, it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in nature. *Worford,* 801 S.W.2d at 109. The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Id.*

Disregarding the conflicting evidence in the trial court that tended to support the theory of usury, we conclude that there was sufficient evidence presented by the Zoning Committee to defeat the Billingsley Parties' usury claim. *Id.* We overrule the Billingsley Parties' third issue.

We affirm the judgment of the trial court in part, reverse and render judgment in part, and set aside the trial court's October 2, 2001 order granting plaintiff's Rule 12 motion.