COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-389-CV
 
  
RICHARD AND HELEN BUCKNER                                           APPELLANTS

 
V.

 
LAKES OF SOMERSET HOMEOWNERS                                        APPELLEE
ASSOCIATION, INC.

 
------------
 
FROM THE 17TH 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
Introduction
        Appellants 
Richard and Helen Buckner appeal from the trial court’s grant of summary 
judgment in favor of appellee the Lakes of Somerset Homeowners Association, Inc. 
(LSHOA). In three issues, the Buckners contend that the trial court abused its 
discretion in granting the summary judgment and in denying the Buckners’ 
motion for new trial and motion for continuance to respond to LSHOA’s motion 
for summary judgment. We reverse and remand.
Background Facts
        The 
Buckners own a home in the Lakes of Somerset Addition, which is subject to deed 
restrictions requiring that all changes to the exterior of existing structures 
must be approved by an Architectural Control Committee (ACC). On or about 
November 3, 2001, the Buckners delivered sample roofing materials to Vince 
Rosen, chairman of the ACC, and requested immediate approval of the materials so 
they could begin reroofing their home the next day. When the Buckners called the 
next day to ask if the materials were approved, Rosen informed them the ACC 
could not decide by the Buckners’ 24-hour deadline, but would instead meet to 
consider the request as soon as possible. The Buckners began replacing the 
existing roof without the ACC’s approval.
        The 
ACC subsequently met on November 10, 2001 and denied the Buckners’ request for 
approval of the roofing material. The Buckners appealed the decision to the 
LSHOA Board of Directors (the Board). On November 18, 2001, the Board met to 
consider the appeal. During the meeting, the Board went to the Buckner home to 
view the materials that had already been installed. Richard Buckner told the 
Board that if it did not approve of the materials, his roofing contractor would 
replace them at no charge. The Board voted unanimously to deny the Buckners’ 
appeal and advised the Buckners of its decision in a letter dated November 19, 
2001.
        Instead 
of removing the disapproved roofing materials and submitting alternative 
materials for approval, the Buckners continued to complete the roof. Rosen 
called the Buckners on December 1, 2001 and asked them to stop working on the 
roof, but Richard told Rosen he “did not agree with the Board’s decision” 
and that “the Board was wrong.” The Buckners continued work on the roof. The 
Board subsequently engaged counsel and, after numerous attempts to resolve the 
dispute, LSHOA filed suit against the Buckners on April 8, 2002, alleging that 
the Buckners’ new roof violated the LSHOA deed restrictions and requesting 
damages and injunctive relief.
        The 
Buckners filed an answer on May 3, 2002, in which they alleged the following as 
affirmative defenses: (1) the ACC unreasonably withheld its approval of the 
roofing material because it had previously approved the use of the same or 
substantially the same material on two other homes in the addition; (2) the 
ACC’s denial of approval of the Buckners’ roofing materials was arbitrary, 
capricious, and racially motivated; and (3) LSHOA did not file suit to enjoin 
the use of the disapproved materials before installation was completed as 
required by the deed restrictions.
        On 
July 16, 2002, LSHOA filed a motion for partial summary judgment alleging that 
it was entitled to judgment as a matter of law because the uncontroverted 
summary judgment evidence showed that the Buckners knowingly replaced their roof 
with unapproved materials and that they could not prove any of their defenses. 
The trial court set a hearing on the motion for September 13, 2002. On September 
10, 2002, the Buckners filed a motion for continuance to respond to the motion 
on the grounds of inability to obtain necessary supporting affidavits despite 
diligent efforts to do so and counsel’s scheduling conflicts due to other 
lawsuits. The trial court denied the continuance, but granted LSHOA’s motion 
for partial summary judgment.
        LSHOA 
filed a second motion for partial summary judgment on November 8, 2002, asking 
that the trial court award it damages, attorney’s fees, and injunctive relief 
because it had prevailed on the liability issues. In their response, the 
Buckners attached evidence related to the liability issues previously decided by 
the trial court. The trial court signed a final judgment granting LSHOA a 
permanent injunction against the Buckners and awarding LSHOA its attorney’s 
fees, but no damages.
        The 
Buckners filed a motion and amended motion for new trial alleging, among other 
things, that newly discovered evidence existed that was unavailable to the 
Buckners when the trial court granted the first partial summary judgment, which 
would likely produce a different result if a new trial were ordered. The trial 
court denied both motions without conducting a hearing.
Analysis
        In 
their first issue, the Buckners contend the trial court erred in granting 
partial summary judgment to LSHOA on the liability issues because the deed 
restrictions provide that approval of the roofing material was unnecessary if 
LSHOA did not sue to enjoin replacement of the roof before its completion and 
because the evidence raises a fact issue on their affirmative defenses that the 
ACC’s withholding of approval for the replacement roof was unreasonable, 
arbitrary, capricious, and racially motivated. We consider the evidence in the 
light most favorable to the Buckners in order to determine if a genuine issue of 
material fact exists that would preclude summary judgment. See Little v. 
Smith, 943 S.W.2d 414, 415 (Tex. 1997); Ryland Group, Inc. v. Hood, 
924 S.W.2d 120, 121 (Tex. 1996). Article VI of the deed restrictions, entitled 
“Architectural Control,” provides in pertinent part:
  
[N]or shall any exterior 
addition to or change or alteration therein be made until the details . . . 
shall have been submitted to and approved in writing . . . by [the ACC]. . . . 
In the event the [ACC] fails to approve or disapprove any such detail, design, 
plan, specification or location within thirty (30) days after submission to it, or 
in any event if no suit to enjoin has 
been commenced prior to the completion thereof, approval will not be required 
and this Article will be deemed to have been fully complied with. [Emphasis 
added.]

  
        We 
review a trial court’s interpretation of a restrictive covenant de novo. Air 
Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd., 109 S.W.3d 900, 
909 (Tex. App.—Dallas 2003, no pet.). We construe restrictive covenants in 
accordance with general rules of contract construction. Pilarcik v. Emmons, 
966 S.W.2d 474, 478 (Tex. 1998). A covenant is “unambiguous as a matter of law 
if it can be given a definite or certain legal meaning.” Id. (quoting Grain 
Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997)). Mere 
disagreement over the interpretation of a restrictive covenant does not render 
it ambiguous. Air-Park Dallas, 109 S.W.3d at 909. Words used in a 
restrictive covenant may not be enlarged, extended, stretched, or changed by 
construction, but will be given their commonly accepted meanings. Id.
        A 
restrictive covenant should be liberally construed to give effect to its purpose 
and intent. Tex. Prop. Code Ann. 
§ 202.003(a) (Vernon 1995). However, doubts should be resolved in favor of the 
free and unrestricted use of the premises, and any ambiguity must be strictly 
construed against the party seeking to enforce the restrictive covenant. Dyegard 
Land P’ship v. Hoover, 39 S.W.3d 300, 308-09 (Tex. App.—Fort Worth 2001, 
no pet.).
        Both 
the Buckners and LSHOA contend that the emphasized language is unambiguous; 
however, they disagree on its meaning. The Buckners claim that the phrase “in 
any event” means that regardless of whether the ACC timely approved or 
disapproved of replacement roofing materials, it was required to file suit to 
enjoin the Buckners’ activities before the roof was completed. LSHOA contends 
that the phrase should be read to mean that it was required to file suit to 
enjoin the Buckners’ activities only in the event the ACC failed to approve or 
disapprove of the materials within 30 days after the Buckners requested 
approval.
        We 
agree that Article VI is unambiguous. After describing one manner in which 
approval will be deemed, in the event the ACC fails to approve or 
disapprove submitted plans within 30 days after submission, the article 
continues by describing another manner of deemed approval: LSHOA’s failure to 
file suit before the roof is complete. The use of the word “any” shows an 
intent to describe all scenarios other than those in which the ACC gives its 
explicit approval or fails to disapprove submitted plans within 30 days: when 
the homeowner has not complied with Article VI by requesting preapproval or when 
the ACC has denied approval and the homeowner continues making alterations in 
accordance with the disapproved plans. LSHOA’s proposed interpretation would 
render the “in any event” language meaningless; if the ACC does not approve 
or disapprove of the submitted plans within 30 days, the plans are deemed 
approved in accordance with Article VI. Thus, a subsequent suit to enjoin 
activities completed in accordance with such plans would be pointless because 
LSHOA would lose.
        LSHOA 
contends that Pilarcik v. Emmons controls this issue because the supreme 
court construed the same language in that case and determined that “the 
covenants [in that case] dictate default consequences in the event the ACC does 
not act swiftly enough.” 966 S.W.2d at 480. The covenant in Pilarcik is 
almost identical to the covenant in this case. LSHOA contends that the quoted 
language indicates that “default consequences” should occur only if 
the ACC does not approve or disapprove of a homeowner’s plans timely enough. 
However, in Pilarcik a group of individual homeowners, rather than the 
homeowners association, sued the nonconforming homeowner, and the issue was 
whether the ACC could grant approval of nonconforming materials after 
the 30 day period had expired. Id. at 476, 479-80. The homeowners filed 
suit when the roof was 98 percent complete; thus, the second part of the 
covenant, which is at issue in this case, was not at issue in that case. Id. 
at 477. Further, the quoted language from Pilarcik supports our 
conclusion: by not filing suit before the Buckners completed construction of 
their new roof, i.e., by not acting swiftly enough, LSHOA may suffer default 
consequences, i.e., the nonconforming roofing materials being deemed approved.
        LSHOA 
judicially admitted in its original petition that the Buckners had completed 
replacing their roof before it filed suit. See Holy Cross Church of God in 
Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (defining judicial admission 
and its effect). “A judicial admission ‘not only relieves [an] adversary 
from making proof of the fact admitted but also bars the party himself from 
disputing it.’” Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 
905 (Tex. 2000) (quoting Gevinson v. Manhattan Constr. Co., 449 S.W.2d 
458, 466 (Tex. 1969)); see Tex. Dep’t of Pub. Safety v. Stanley, 34 
S.W.3d 321, 322 (Tex. App.—Fort Worth 2000, no pet.). Thus, LSHOA’s own 
pleadings show that it was not entitled to summary judgment because LSHOA did 
not file suit before the Buckners’ roof was complete. Accordingly, we hold 
that the trial court erred in granting partial summary judgment to LSHOA on the 
liability issues. We sustain the Buckners’ first issue.[1]
        Having 
sustained the Buckners’ first issue, we reverse the trial court’s judgment 
in favor of LSHOA and remand the case for further proceedings.[2]

  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and HOLMAN, JJ.
 
DELIVERED: March 25, 2004


NOTES
1.  
Because we sustain the Buckners’ first issue, we do not address whether a fact 
issue exists with regard to the Buckners’ other affirmative defenses, nor do 
we address the Buckners’ second and third issues. See Tex. R. App. P. 47.1.
2.  
Because we have determined that LSHOA failed to show it was entitled to partial 
summary judgment in accordance with its motion and because the Buckners did not 
seek their own summary judgment on the liability issues, we cannot render 
judgment for the Buckners and must remand to the trial court for further 
proceedings consistent with this opinion. See Tex. R. App. P. 43.2(d), 43.3(a); CU 
Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998).