Opinion issued
August 11, 2011 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 


 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 

 
 



NO. 01-09-01086-CV

 


 
 

 
 



GABRIEL DUNCAN AND EDWARD DUNCAN,
Appellants

 

V.

 

DOMINION ESTATES HOMEOWNERS ASSOCIATION, CHARLES AMOS,
THELMA BOWIE, NATALIE POWELL, AND MARQUES COLLINS, Appellees

 


 
 

 
 
 



On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause Nos. 2007-67563

 


 
 

 
 
 



MEMORANDUM
OPINION

Appellants, Gabriele and Edward
Duncan, challenge the trial court’s entry, after a jury trial, of a take-nothing
judgment in favor of appellee, Dominion Estates Homeowners Association
(“DEHA”), and the trial court’s rendition of summary judgment in favor of
appellees, Charles Amos, Thelma Bowie, Natalie Powell, and Marques Collins (the
“DEHA board members”), in the Duncans’ suit against DEHA and the DEHA board
members for breach of restrictive covenants and declaratory judgment.  In their first issue, the Duncans contend
that the summary-judgment motion of the DEHA board members did not challenge
the elements of the Duncans’ claims or conclusively establish an affirmative
defense.  In their second and third
issues, the Duncans contend that the evidence at trial conclusively established
that DEHA “failed to comply” with the Dominion Estates Declaration of
Covenants, Conditions and Restrictions (the “Declaration”) when it assessed a
$250 special assessment and the Duncans incurred damages in the amount of $250.  In their fourth and fifth issues, the Duncans
contend that the evidence at trial conclusively established that the DEHA
Architectural Review Committee’s “Design Guidelines,” which included “monetary
fines in specific dollar amounts” and “imposed weekly late fees for delinquent
assessments,” were not authorized by the Declaration.  In their sixth, seventh, and eighth issues,
the Duncans contend that, after the jury trial, the trial court erred in not
rendering judgment in their favor on their claim for breach of restrictive
covenants, awarding them attorney’s fees, and ordering the release of funds
that they had deposited with the registry of the trial court.           

We reverse the trial court’s take-nothing
judgment entered against the Duncans on their breach of restrictive covenant claim
against DEHA, render judgment in the Duncans’ favor in the amount of $250 on
this claim, and remand the Duncans’ claim for attorney’s fees to the trial
court.  We also reverse the trial court’s
order granting summary judgment in favor of the DEHA board members and remand
those claims to the trial court for further proceedings.      

Background

          The
Duncans owned a home located in the Dominion Estates subdivision subject to
restrictive covenants set forth in the Declaration, which provided for, among
other things, the creation of an Architectural Review Committee (the “ARC”).  The ARC separately created the Design
Guidelines, which provided that each homeowner had the duty “to keep and
maintain the[ir] Lot, its yard and landscaping, and all improvements therein
and thereon, in a well maintain[ed], safe, clean and attractive condition.”  Citing this provision, DEHA, on May 10, 2007,
sent the Duncans, by certified mail, a letter stating that they were in
violation of the ARC Design Guidelines and instructing them to, among other
things, remove foil that had been wrapped around some exterior pipes on their
home.  In its letter, DEHA noted that
failure to comply with its instructions to remove the foil could result in a “fine”
as well as “corrective action at the owner’s expense.”  This first certified letter was returned to
DEHA as unclaimed.  

DEHA sent the Duncans a second
letter, which was dated June 5, 2007 but postmarked June 11, 2007, stating that
the Duncans remained in violation of the Design Guidelines.  In this letter, which the Duncans received on
June 15, 2007, DEHA, citing the same Design Guideline provision that it had
referenced in its prior letter, instructed the Duncans to remove the foil.  DEHA noted that the Duncans’ failure to
comply “with the regulations by removing the foil from the pipes by June 1,
2007” resulted in the imposition of a $50 fine and the failure to remove the
foil by June 20, 2007 would result “in an additional fine of $50 per week until
the foil is removed.”  

On July 28, 2007, DEHA sent the
Duncans a third letter, instructing them to remove “gray tape”[1]
from their pipes by August 17, 2007 and to pay the $50 fine immediately.  The Duncans did not pay the fine, and DEHA began
to assess weekly fines of $50 against the Duncans for their failure to pay the
original $50 fine.      

In November 2007, the Duncans filed
their original petition, alleging that the initial $50 fine, as well as the subsequent
$50 fines or late fees imposed by DEHA, were not authorized by the
Declaration.  The Duncans asserted a
claim against DEHA for breach of restrictive covenants and sought declarations[2] that
DEHA was not authorized “to impose both a late fee and interest” on a
delinquent assessment or “more than one delinquent assessment,” the Design
Guidelines could not be used as the sole basis to impose an assessment without
a concurrent violation of the Declaration, the “rules and regulations regarding
fines and penalties” used by DEHA to impose the fine were not set forth in the
Declaration and were thus “void and unenforceable,” and the Declaration did not
authorize DEHA to impose a liquidated fine or other penalty that was not “fixed
and established” or without advanced notice of the violation and possible “specific
penalties.”  The Duncans further sought
to “quiet title and remove alleged liens” against their home as well as orders compelling
DEHA to “timely comply” with their request to inspect DEHA records.  

The Duncans further alleged that in
June 2008, the DEHA board members,[3] at
a DEHA meeting, made defamatory statements about them and imposed a $250 special
assessment in violation of the Declaration against all homeowners for legal
fees without allowing the homeowners to vote on it.  The Duncans asserted claims against the DEHA
board members for tortious interference with contract, defamation, breach of
restrictive covenants, constructive fraud, and breach of fiduciary duties.  

DEHA filed an answer and counterclaims
against the Duncans, alleging that they had breached the restrictive covenants
and requesting an order enjoining the Duncans from violating the restrictions. The
DEHA board members filed an answer and, subsequently, a summary-judgment motion,
in which they argued that the Duncans’ claims against them were barred under
“statutory law.”  The trial court granted
the DEHA board members’ summary-judgment motion.

On August 4, 2008, DEHA, stating that
it was seeking “past due fines and assessments,” filed a Notice of Lis Pendens
on the Duncans’ home.  On April 16, 2009,
the Duncans, seeking to sell their home to a third party, filed a motion to
cancel the lis pendens, to which they attached a copy of a letter from DEHA’s
attorney.  DEHA’s attorney, in the
letter, stated that, as of April 8, 2009, DEHA held a lien against the Duncans’
home in the amount of $4,800 and the lien amount increased “$50 each
week.”  The Duncans, based upon this
letter, requested that the trial court require them to deposit $5,000 in the
registry of the court in exchange for the cancellation of the lis pendens.  On April 27, 2009, the trial court granted
the Duncans’ motion, but ordered them to deposit $10,000, rather than $5,000,
into the court’s registry.  The trial
court further ordered that DEHA, upon the deposit being made, file a notice
releasing the lis pendens.  The Duncans then
deposited the money into the trial court’s registry.   

The Duncans and DEHA tried their
claims to a jury in October 2009.  After
the trial, the jury, in response to fourteen questions, made findings, some of
which conflicted, in favor of both the Duncans and DEHA.  The jury found, in favor of DEHA, that (1) the
Declaration authorized the creation of the Design Guidelines that provided “monetary
fines in specific amounts” and “weekly late fees for a delinquent assessment,” (2)
“the tape on the pipes located on the exterior pipes of the Duncans’ home” constituted
a violation of the Declaration, (3) the Duncans’ violation was not excused, (4)
DEHA complied with the Declaration “when it assessed the $250 special
assessment,” (5) the Duncans were entitled to no damages for the “special
assessments,” and (6) the Duncans failed to comply with the Design Guidelines.

However, the jury also found, in
favor of the Duncans, that (1) the Declaration did not “prohibit the placement
of tape on pipes located on the exterior” of homes[4] in
the subdivision, (2) DEHA did not give the Duncans adequate notice of the
Design Guidelines before enforcing those guidelines against them, (3) DEHA did
not give the Duncans adequate notice of the alleged violation before imposing
fines against them, (4) DEHA did not give the Duncans a reasonable amount of
time in which to correct the alleged violation before imposing fines against
them, (5) DEHA did not comply with the Declaration when it imposed a fine and
late fees against the Duncans, and (6) DEHA was not entitled to any damages for
the Duncans’ “unpaid fines and late charges.”  The jury did not reach the Duncans’ attorney’s
fees question because the instructions provided that the jury would make an
attorney’s fees award only if the jury had awarded the Duncans damages for the “special
assessments” that they had paid.  

The Duncans filed a motion to
disregard certain findings, asserting that they had established, as a matter of
law, that the Declaration did not authorize the Design Guidelines that provided
for specific monetary fines or weekly late fees and DEHA did not comply with
the Declaration when it imposed the $250 special assessment.  The Duncans further argued that they, as a
matter of law, were entitled to recover $250 for the unauthorized special
assessment.  Finally, they argued that
because the jury had found that DEHA had failed to comply with the Declaration
when it imposed a fine and late fees, the trial court should award them attorney’s
fees.[5]  The Duncans also filed a motion to release
the funds that they had deposited with the trial court on the ground that the
jury verdict was generally in their favor. 


The trial court denied the Duncans’ motion
to disregard the jury findings and motion to release the funds.  It then entered a final judgment, ordering
that the Duncans take nothing on their claims against DEHA and that DEHA take
nothing on its claim against the Duncans. 
The trial court did not provide any declaratory or injunctive relief.

The Duncans then filed a motion to
modify the trial court’s judgment and a motion for new trial, arguing that the
evidence is legally and factually insufficient to support the jury’s findings
in favor of DEHA, the zero damages finding against them, and the trial court’s failure
to award them attorney’s fees.  The
Duncans further argued that the jury’s findings that the tape on their pipes constituted
a violation of the Declaration and the Duncans had failed to comply with the
Design Guidelines were “immaterial” because the jury further found that DEHA had
failed to comply with the Declaration and Design Guidelines.  The Duncans asserted that, when “construed as
a whole,” the jury’s verdict afforded them recovery and denied DEHA
recovery.  The Duncans also requested attorney’s
fees and the return of their deposited funds. 
The trial court denied the Duncans’ new-trial motion.

Special Assessment

In their second issue, the Duncans
argue that the evidence at trial conclusively established that DEHA “failed to
comply” with the Declaration when it assessed a $250 special assessment against
all homeowners for legal fees because “it is undisputed” that DEHA “did not
obtain a vote from its members before imposing” the assessment in June 2008.  In their third issue, the Duncans argue that
the evidence conclusively established that they incurred damages in the amount
of $250 when they paid the unauthorized special assessment under protest. 

Article 6 of the Declaration, entitled
“Assessments,” provides that each homeowner agrees to pay a variety of assessments.  Section 6.1 identifies the following types of
assessments: “regular assessments” for maintenance, taxes, and insurance on the
individual lots and common areas; “special assessments” for reserve funds,
capital improvements, or “unusual or emergency matters . . .  to be fixed, established and collected from
time to time as hereinafter provided”; “special individual assessments” against
individual owners for water and sewage charges or for maintenance and repairs
caused by a homeowner’s willful or negligent acts; “individual assessments”
against individual lot owners for violations of the rules or regulations
“pertaining to” DEHA “to be fixed, established and collected from time to time
as hereinafter provided”; and “other sums.” 


Section 6.2, entitled “Purpose of
Assessments,” provides that the assessments levied by DEHA shall be used
exclusively for a number of delineated purposes, including the “payment of
legal and all other expenses incurred in connection with the collection,
enforcement, and administration of all assessments and charges and in
connection with the enforcement of this Declaration.”  Article 6.2 states that the board’s judgment
“in establishing annual, special and individual assessments and other charges .
. . shall be final and conclusive so long as such judgment is exercised in good
faith.”  

Section 6.4, entitled “Special
Assessments,” provides,

In addition to the regular assessments authorized by
Section 6.3 hereof, the Association may levy a special assessment, applicable
to that year or a specified number of 
years, for the purpose of defraying, in whole or in part, the cost of
any future, current or past construction or reconstruction unexpected repair or
replacement of capital improvements upon the Common areas, including any
necessary fixture and personal property related thereto, or for unusual or
emergency purposes’ provided that any
such assessment shall have the affirmative approval of a majority of  votes of each class of Members present (in
person or by proxy) and entitled to vote at any regular or special meeting of
Members called for such purpose.

 

(Emphasis added.)

The restrictions contained in the
Declaration are restrictive covenants concerning real property.  See Tex. Prop. Code Ann. § 202.001(4)
(Vernon 2007). Restrictive covenants are subject to the general rules of
contract construction. Uptegraph v.
Sandalwood Civic Club, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010,
no pet. h.) (citing Pilarcik v. Emmons,
966 S.W.2d 474, 478 (Tex. 1998)).  As
when interpreting any contract, our primary duty in construing a restrictive
covenant is to ascertain the parties’ intent.  Bank
United v. Greenway Improvement Ass’n, 6 S.W.3d 705, 708 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied).  We focus
on the parties’ objective, rather than subjective, intent, as that intent is
reflected in the written contract.  See Lopez v. Munoz, Hockema & Reed,
22 S.W.3d 857, 861 (Tex. 2000).  We must
examine the covenant as a whole in light of the circumstances present when the
covenant was made, and give a restrictive covenant’s words and phrases their
commonly accepted meaning.  See Pilarcik, 966 S.W.2d at 478; Truong v. City of Houston, 99 S.W.3d
204, 214 (Tex. App.—Houston [1st Dist.] 2002, no pet.); see also Owens v. Ousey, 241 S.W.3d 124, 129–30 (Tex. App.—Austin
2007, pet. denied) (explaining that we construe restrictive covenants as a
whole in light of the circumstances at the time the parties entered into the
agreement, giving effect to every sentence, clause, and word of a covenant, and
avoiding constructions that would render parts of the covenant superfluous or
inoperative). 

We review a trial court’s
interpretation of a restrictive covenant de novo. Uptegraph, 312 S.W.3d at 925; Air
Park-Dallas Zoning Committee v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d
900, 909 (Tex. App.—Dallas 2003, no pet.). 
Whether restrictive covenants are ambiguous is a matter of law for the
court to decide.  Pilarcik, 966 S.W.2d at 478; Uptegraph,
312 S.W.3d at 925.  A covenant is
unambiguous if, after appropriate rules of construction have been applied, the
covenant can be given a definite or certain legal meaning.  Pilarcik,
966 S.W.2d at 478; Uptegraph, 312
S.W.3d at 925.  In contrast, if, after
appropriate rules of construction have been applied, a covenant is susceptible
of more than one reasonable interpretation, the covenant is ambiguous.  Pilarcik,
966 S.W.2d at 478; Uptegraph, 312
S.W.3d at 925. That the parties disagree over a restrictive covenant’s
interpretation does not necessarily render the covenant ambiguous. Uptegraph, 312 S.W.3d at 925.

Covenants restricting the free use of
land are not favored, but will be enforced if they are clearly worded and
confined to a lawful purpose.  Wilmoth v. Wilcox, 734 S.W.2d 656, 657
(Tex. 1987).  Restrictive covenants are
to be construed liberally in order to give effect to their purpose and intent.[6] Tex. Prop. Code Ann. § 202.003(a) (Vernon
2007).

Here, the $250 assessment was a
“special assessment,”[7]
imposed against all homeowners in the subdivision for “unusual or emergency
matters” under Article 6 of the Declaration, for the legal fees associated with
the dispute between DEHA and the Duncans. 
In question number ten, the jury was asked whether DEHA complied with
the Declaration when it assessed the special assessment of $250.  The jury answered “Yes.”  On appeal, DEHA does not dispute the fact that
the special assessment was not approved by a vote of homeowners.  Rather, DEHA asserts that the jury’s
affirmative answer is supported by sufficient evidence because, when properly
construed, section 6.4 did “not require a vote of the membership” to approve
the special assessment.  DEHA contends
that the language in section 6.4 requiring a vote “clearly refer[s] to
[assessments for] construction, repairs, and capital improvements.”  In contrast, the Duncans contend that section
6.4 requires a vote and, because it was undisputed that no vote was held, it is
conclusively established that DEHA breached the Declaration when it imposed the
special assessment.

We conclude that section 6.4 plainly applies
to the special assessments provided for in the Declaration, including those
imposed “for unusual or emergency purposes.” 
 We further conclude that the
special assessment of $250 was required to receive the “the affirmative approval
of a majority of votes” of homeowners.  There
was no such vote.  Accordingly, we hold
that the evidence established, as a matter of law, that DEHA failed to comply
with the Declaration when it imposed the special assessment of $250 for legal
fees.  

Additionally, in question number 11,
the jury was asked to determine the amount of damages that the Duncans were
entitled to recover as a result of DEHA’s failure to comply with the
Declaration.  Because it is undisputed
that the Duncans paid the $250 special assessment, and because we have held
that the evidence conclusively established that DEHA failed to comply with the
Declaration in imposing this special assessment, we further hold that the
evidence established, as a matter of law, that the Duncans were entitled to
recover their $250 payment as damages for DEHA’s failure to comply with the
Declaration.[8]

We sustain the Duncans’ second and
third issues.

The Duncans’ Claim for DEHA’s Breach of Restrictive Covenants

In their sixth issue, the Duncans
argue that the trial court erred in not rendering judgment in their favor
against DEHA on their claim for breach of restrictive covenants because the
jury found that DEHA did not give the Duncans adequate notice of the Design
Guidelines before enforcing them against the Duncans, DEHA did not give the
Duncans adequate notice of the alleged violation before imposing fines against
the Duncans, DEHA did not give the Duncans a reasonable amount of time in which
to correct the alleged violation before imposing fines against the Duncans,
DEHA did not comply with the Declaration when it imposed a fine and late fees
against the Duncans, and DEHA was not entitled to any damages for the Duncans’
“unpaid fines and late charges.”[9]  In their eighth issue, the Duncans argue that
the trial court erred in not ordering the release of funds that they had
deposited with the registry of the trial court because they prevailed on their
claim for breach of restrictive covenants, there is no longer any support for a
property lien against their home, and there is no “legal or factual basis for
withholding the funds.”

DEHA has not challenged the jury’s findings
made in the Duncans’ favor.  Even
assuming that the foil on the Duncans’ pipes constituted a violation of the
Declaration, and even assuming that the Declaration would authorize, in
general, the monetary fines and late fees, the jury findings in favor of the
Duncans compelled the trial court to enter a judgment in the Duncans’ favor on
their claim for breach of restrictive covenants against DEHA.  The jury found that DEHA did not provide the
Duncans adequate notice of the Design Guidelines or the alleged violation or a
reasonable amount of time to correct the violation before imposing the
challenged fines.  The jury further found
that DEHA had not complied with the Declaration in imposing the fine and late
fees, and, thus, DEHA was not entitled to recover any of the assessed fines and
late fees.

The Duncans originally brought suit
against DEHA after it had imposed the fines and late fees and filed a lien on
their house.  Although the Duncans
pleaded various claims, they were seeking a judgment establishing that (1) DEHA
had breached the restrictive covenants by imposing unauthorized fines and late
fees, (2) DEHA had no right to impose a lien, and (3) they were entitled to the
return of their money deposited with the trial court to remove the lis pendens.

Regardless of whether the foil
constituted a violation of the Declaration,[10] the
critical matter in dispute arose from the imposition of the fines and late
fees.  The jury’s findings that DEHA had failed
to comply with the Declaration when it imposed a fine and late fees compels not
only a take-nothing judgment entered against DEHA on its counterclaims against
the Duncans, which the trial court entered, but also a judgment entered in the
Duncans’ favor on their claim against DEHA for breach of restrictive
covenants.  Accordingly, we hold that the
trial court erred in not entering judgment in the Duncans’ favor on their
breach of restrictive covenants claim.

Moreover, because the Duncans were
entitled to a judgment in the their favor on their claim against DEHA for
breach of restrictive covenants, there is no basis for the trial court’s
refusal to release to the Duncans the funds that they had deposited into the
registry of the trial court to remove the lis pendens.  Accordingly, we hold that the trial court
erred in not ordering the release of the Duncans’ funds.

We sustain the Duncans sixth and
eighth issues.

Design Guidelines

In their fourth and fifth issues, the
Duncans argue that the evidence at trial conclusively established that the
“Design Guidelines” that provided for “monetary fines in specific dollar
amounts” and “weekly late fees for delinquent assessments” were not authorized
by the Declaration because the Declaration afforded only DEHA with the power to
impose assessments, the Declaration did not afford the ARC with these powers,
the fines were “arbitrary and punitive” and not fixed or established as
required by the Declaration, the Declaration limits individual assessments “to
amounts spent,” and the Declaration afforded DEHA the right to assess “only one
late fee for each delinquent assessment.”

Having concluded that the Duncans
were entitled to a judgment rendered in their favor based upon the jury’s other
findings, we need not directly address the Duncans’ fourth and fifth
issues.  We also note that DEHA has not
challenged on appeal the jury’s findings made in favor of the Duncans, which we
conclude compel a judgment entered in the Ducans’ favor and provide them with
all of the relief they have requested on appeal.  In sum, the Duncans’ fourth and fifth issues
are mooted by our above holdings.

Attorney’s Fees

          In
their seventh issue, the Duncans argue that the trial court erred in not
awarding them their attorney’s fees because the evidence established, as a
matter of law, that DEHA breached the restrictive covenants.

          The
jury did not reach the attorney’s fees question because it was predicated upon
the jury awarding some amount of damages for the special assessment.[11]  We have held that the evidence conclusively
established that DEHA had failed to comply with the Declaration when it imposed
the $250 special assessment and the Duncans were entitled to recover $250 as
their damages for their paying this unauthorized special assessment.  We have also held that the Duncans are
entitled to a judgment in their favor on their claim for breach of restrictive
covenants.

          In
“an action based on breach of a restrictive covenant pertaining to real
property, the court shall allow to a prevailing party who asserted the action
reasonable attorney’s fees in addition to the party’s costs and claim.”  Tex.
Prop. Code Ann. § 5.006 (Vernon 2010). 
In determining reasonable attorney’s fees, the court shall consider (1)
the time and labor required; (2) the novelty and difficulty of the questions; (3)
the expertise, reputation, and ability of the attorney; and (4) any other
factor.  Id.  The award of attorney’s
fees under section 5.006 is mandatory, and a court has no discretion to not
award fees to a prevailing party.  Ski Masters of Texas, LLC v. Heinemeyer,
269 S.W.3d 662, 674 (Tex. App.—San Antonio 2008, no pet.); Mitchell v. LaFlamme, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  

Accordingly, we hold that the trial
court erred in not awarding the Duncans their attorney’s fees, and we remand
this matter to the trial court for an award of attorney’s fees.  Briargrove
Park Prop. Owners, Inc. v. Riner, 867 S.W.2d 58, 62 (Tex. App.—Texarkana
1993, writ denied) (remanding for attorney’s fees award under section 5.006).

We sustain the Duncans’ seventh
issue. 

Summary Judgment

In their first issue, the Duncans argue
that the trial court erred in granting summary judgment in favor of the board
members because the board members did not challenge any elements of their
claims or conclusively establish an affirmative defense.

 To prevail on a summary-judgment motion, a movant
has the burden of proving that it is entitled to judgment as a matter of law
and that there is no genuine issue of material fact.  Tex. R.
Civ. P. 166a(c); Cathey v. Booth,
900 S.W.2d 339, 341 (Tex. 1995).  When a
defendant moves for summary judgment, it must either (1) disprove at least one
essential element of the plaintiff’s cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense,
thereby defeating the plaintiff's cause of action.  Cathey,
900 S.W.2d at 341.  When deciding whether
there is a disputed, material fact issue precluding summary judgment, evidence
favorable to the non-movant will be taken as true.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable
inference must be indulged in favor of the non-movant and any doubts must be
resolved in her favor.  Id. at 549.

A motion for summary judgment must
stand or fall on the grounds expressly presented in the motion.  Tex. R.
Civ. P. 166a; Cincinnati Life Ins.
Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex.
1993).  We are restricted to reviewing
the propriety of the granting of the summary judgment on the basis of the
grounds actually asserted in the motion for summary judgment.  Cates,
927 S.W.2d at 626; Hendrix v. Port Terminal R.R. Ass’n, 196 S.W.3d 188, 201–02 (Tex. App.—Houston
[1st Dist.] 2006, no pet.).  It is
reversible error to grant a summary-judgment motion on a claim not addressed in
the motion.  Chessher v. Sw. Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983).  A trial court errs in granting more relief
than was requested by disposing of issues never presented to it in the motion
for summary judgment. Perry v. Greanias,
95 S.W.3d 683, 701 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

The Duncans pleaded claims against
the DEHA board members for tortious interference with contract, defamation,
breach of restrictive covenants, constructive fraud, and breach of fiduciary
duties. The DEHA board members, in their summary-judgment motion, simply argued
that the Duncans’ claims were barred under “statutory law,” asserting that the
Duncans had not alleged “any ultra vires” acts for which they could be held
individually liable.  Citing various
provisions of the Texas Business Organizations Code, the DEHA board members
noted that as members of a corporation, they were “not personally liable for a
debt, liability, or obligation of the corporation” and that a “person seeking
to establish liability of a director” of a corporation “must prove that the
director did not act: (1) in good faith; (2) with ordinary care; and (3) in a
manner the director reasonably believed to be in the best interest of the corporation.”  See
Tex. Bus. Org. Code Ann. §§ 22.152,
22.221 (Vernon Supp. 2010).  And the DEHA
board members asserted that there was no allegation or evidence that they had
failed to use ordinary care.

In their response, the Duncans noted
that the DEHA board members had not attached to their summary-judgment motion any
evidence in support of their assertions and failed to address the elements of
their claims.  The Duncans argued that
their claims should survive because “a corporate officer who knowingly participates
in tortious or fraudulent acts may be held individually liable to third persons
even though he performed the act as an agent of the corporation.”  The Duncans attached to their response the
affidavit of Gabrielle Duncan, who testified that the Duncans had not received
DEHA’s May 10, 2007 letter, DEHA had imposed the $50 fine without notice,
DEHA’s second letter allowed the Duncans only four days to respond, DEHA had failed
to notify homeowners in the subdivision that the Design Guidelines had been
amended to allow for a $50 fine,[12]
DEHA had failed to post the required notice on the front door of the Duncans’
home before imposing the fine, the DEHA board members had made defamatory
statements against them at a meeting in June 2008, the DEHA board members in
violation of the Declaration had imposed a $250 special assessment without a
homeowner vote, and the DEHA board members had refused the Duncans’ requests
for inspection of DEHA records.  She
further testified that she and her husband had moved from their home as a
result of the conduct of DEHA and the DEHA board members. 

 We recognize that, based upon our review of
the trial record, the majority of the Duncans’ claims appear to arise solely
from their dispute with DEHA, not with the DEHA members.  Nevertheless, the Duncans did assert a number
of direct claims against the DEHA board members, but the summary-judgment
motion of the DEHA board members wholly fails to address many of these claims.  For example, the Duncans alleged that they
were defamed by the DEHA board members at a DEHA meeting, but the DEHA board
members’ summary-judgment motion does not reference the Duncans’ defamation
claim.  Rather, the DEHA board members’
summary-judgment motion discusses general principles of vicarious liability,
respondeat superior, express and implied authority, alter ego, and piercing the
corporate veil.  Much of this discussion
has no application to the Duncans’ claims or in any way supports the DEHA board
members’ summary judgment.  The DEHA board
members also argued in their summary-judgment motion that a “corporation may
indemnify” its directors, and thus it was “pointless . . . to keep the board
members in this case.”  Although the
Duncans’ claims against the DEHA board members may prove to be “pointless,”
such an argument did not entitle the DEHA board members to summary
judgment.  The DEHA board members also
cited to “current statutory law,” noting that they cannot be held personally
liable for “debts, liabilities, or obligations” of DEHA.  However, this did not address the Duncans’
specific claims.  

Moreover, to the extent the DEHA board
members now argue on appeal that their summary-judgment motion established that
there is no evidence to support the imposition of individual liability, we
conclude that the motion cannot be fairly construed as a no-evidence summary-judgment
motion.  See Tex. R. Civ. P.
166a(i).  The DEHA board members did not
cite rule 166a(i), nor did they attack any specific element of the various
causes of action asserted by the Duncans.   
Finally, although the DEHA board members now argue that they were
entitled to summary judgment because the trial court had previously denied the
Duncans’ request to join them as defendants in the original lawsuit, it is
undisputed that the board members became defendants in the underlying suit
after consolidation.  The fact that the
trial court initially denied the Duncans’ request to join the DEHA board
members in the lawsuit did not establish the DEHA board members’ right to
summary judgment on the claims pleaded by the Duncans.

We conclude that the DEHA board
members failed to establish, as a matter of law, their entitlement to summary
judgment on the Duncans’ claims. 
Accordingly, we hold that the trial court erred in granting the DEHA board
members’ summary-judgment motion.

We sustain the Duncans’ first issue.

Conclusion

          We
reverse the trial court’s take-nothing judgment entered in favor of DEHA against
the Duncans, render judgment in favor of the Duncans’ against DEHA in the
amount of $250 on the Duncans’ breach of restrictive covenant claim, render
judgment that the money that the Duncans deposited with the registry of the
trial court be released to them in light of the fact that they prevailed on
their claim for breach of restrictive covenant, and remand the Duncans’ claim
for attorney’s fees against DEHA to the trial court.  We also reverse the trial court’s judgment in
favor of the DEHA board members against the Duncans, and we remand the Duncans’
claims against the DEHA board members to the trial court for further
proceedings.  

 

 

Terry Jennings

Justice

 

Panel consists of Justices Jennings, Higley,
and Brown.











[1]           The Duncans presented evidence that
they replaced the foil with tape.





[2]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 2008).

 





[3]           The Duncans originally filed their
claims against the DEHA board members in a separate lawsuit, which was consolidated into the instant case.





[4]           In response to a question from the
jury during deliberations, the trial court instructed the jurors that the word
“foil” should replace the word “tape.” 





[5]           See
Tex. Prop. Code Ann. § 5.006
(Vernon 2010).  





[6]           This
Court has recently addressed the split among the courts of appeals regarding
the potential conflict between the common-law requirement of construing
restrictions strictly and the Property Code’s requirement of construing
residential covenants liberally to effectuate their purposes and intent. See Uptegraph v. Sandalwood Civic Club,
312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet. h.).  As in that case, here, neither party asserts
that the covenant at issue is ambiguous, and we agree.  Thus, we need not address any potential
conflict.

 





[7]           We note that the jury charge referred to this assessment as a “special assessment” in
accord with Article 6, and neither party complains about the use of this term
in the jury charge.  





[8]           We note that the charge incorrectly
provided that the jury should only award the Duncans damages for their payment
of the special assessment if it found that DEHA had complied with the
Declaration in assessing the $250 special assessment.  Of course, the charge should have instructed
the jury to consider the appropriate award of damages if it found DEHA had not
complied with the Declaration.    





[9]           The
Duncans also note that the jury found, in their favor, that the Declaration did
not “prohibit the placement of tape on pipes located on the exterior pipes of
homes.”  However, the jury, in response
to a separate question, made the directly conflicting finding that the “the
tape on the pipes located on the exterior pipes of the Duncans’ home”
constituted a violation of the Declaration.





[10]         The jury’s findings in this regard were
rendered immaterial by the jury’s findings compelling a judgment in the
Duncans’ favor on their breach of restrictive covenant claim.  See
Salinas v. Rafati, 948 S.W.2d 286, 288 (Tex. 1997).





[11]         On
appeal, the Duncans have not directly challenged the trial court’s charge
predicating the jury’s award of attorney’s fees upon an award of damages for
the payment of the special assessment. 
However, they have asserted that, irrespective of the jury’s findings,
they are entitled to recover attorney’s fees pursuant to their breach of
restrictive covenant claim and the Declaratory Judgment Act.  Tex.
Prop. Code Ann. § 5.006 (Vernon 2010).





[12]         As the Duncans emphasize, there is no
fine provision in the Declaration.