**Opinion issued October 15, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-13-00362-CV**

_____

**PHILLIP MANDERSCHEID, Appellant**

**V.**

**LAZ PARKING OF TEXAS, LLC, and BOOT MAN, INC.
D/B/A PREMIER PARKING ENFORCEMENT, Appellees**

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Cause No. 1019656**

---

**O P I N I O N**

After a justice court determined that there was probable cause to boot Appellant Phillip Manderscheid's car, Manderscheid appealed to the county court at law, which dismissed his case for want of prosecution after Manderscheid

refused to proceed to a non-jury trial. Manderscheid raises seven issues, including complaints about the county court at law's failure to permit Manderscheid to conduct the boot-hearing appeal before a jury.[1] For its part, Appellee Boot Man, Inc. contends that we should dismiss this appeal for lack of subject matter jurisdiction because Manderscheid did not timely file his request for a boot hearing under section 2308.456(a) of the Texas Occupations Code.[2] We hold that we have jurisdiction to consider Manderscheid's appeal, and we affirm.

## Background

Manderscheid parked in a private lot owned by LAZ Parking in downtown Houston without paying the mandatory parking fee. According to Manderscheid, the parking signs indicating the cost of parking were difficult to read and improperly maintained, and he assumed parking was free. Boot Man, Inc. placed a boot on Manderscheid's car along with a sticker with its contact information on the car's driver-side window. When Manderscheid returned to his car, he called Boot Man to remove the boot.

Manderscheid paid Boot Man $113.25 to remove the boot, and the Boot Man employee informed Manderscheid that he could request a hearing to protest the booting. He also gave Manderscheid a receipt detailing the necessary steps to

---

[1] Because Manderscheid is proceeding pro se, we liberally construe his brief.

[2] LAZ Parking of Texas, LLC did not appear at the hearing and did not file an appellate brief.

2

file a hearing request. Among other things, the notice set forth the justice court's contact information and stated that Manderscheid must deliver his hearing request to the justice court before the 14th day after the date his car was booted, excluding weekends and holidays. Manderscheid requested a hearing, but not before the 14-day deadline.

The justice court held a hearing nevertheless. It found that probable cause existed to boot Manderscheid's car, and it denied his request for reimbursement of the $113.25 he paid for the boot's removal. Manderscheid appealed to the county court at law. On December 4, 2012, the county court at law notified the parties that a bench trial was set for January 14, 2013. On December 11, 2012, Manderscheid filed a jury demand and paid the jury fee.

On the day of trial, the county court at law denied Manderscheid's request for a jury on the ground that he did not have a right to a jury trial in an appeal from a boot hearing. Manderscheid refused to put on his case without a jury and, after warning Manderscheid that his failure to proceed would result in dismissal, the county court at law dismissed the cause for want of prosecution. Manderscheid moved for a new trial on the ground that he was entitled to a jury trial. The county court at law denied his motion, and Manderscheid appealed.

**Jurisdiction**

Before turning to the merits, we address Boot Man's assertion that Manderscheid's failure to timely request a hearing in justice court deprives us of jurisdiction.

**A.     Standard of Review**

Subject matter jurisdiction "is essential to the authority of a court to decide a case" and therefore cannot be waived and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993). We review the existence of subject matter jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

**B.     Applicable Law**

The Texas Towing and Booting Act establishes a procedure by which one may challenge the booting of his vehicle. It states: "The owner or operator of a vehicle that has been . . . booted without the consent of the owner or operator of the vehicle is entitled to a hearing on whether probable cause existed for the . . . booting." TEX. OCC. CODE ANN. § 2308.452 (West 2012). Subsection 2308.456(a) establishes a timeframe in which to request such a hearing: the party challenging the booting "must deliver a written request for the hearing to the court before the 14th day after the date the vehicle was . . . booted, excluding Saturdays, Sundays,

4

and legal holidays." *Id.* § 2308.456(a) (West 2012). The request must be delivered to the justice court having jurisdiction over the county in which the parking facility is located, and "a person who fails to deliver a request in accordance with Subsection (a) waives the right to a hearing." *Id.* §§ 2308.453 (West Supp. 2014), 2308.456(d) (West 2012).

## C.    Analysis

Boot Man contends that subsection 2308.456(a), which establishes a 14-day deadline to request a boot hearing, is jurisdictional. It argues that the justice court lacked subject matter jurisdiction to conduct the boot hearing, because Manderscheid failed to request a hearing within the 14-day deadline.

Manderscheid's car was booted on June 26, 2012. Excluding Saturdays, Sundays, and the July 4th holiday, Manderscheid had until July 17, 2012 to request a hearing. *See id.* Manderscheid filed his request on July 20, which was 3 days late, and the justice court conducted the hearing despite Manderscheid's untimely request.[3] *See id.* The question we must decide is whether Manderscheid's failure

---

[3]    There is some evidence in the record that Manderscheid initially mailed his request for a hearing via the United States Postal Service on July 3, 2012. However, the envelope was addressed to the wrong street address and was never received by the justice court. Instead, the envelope was returned to Manderscheid. Accordingly, the mailbox rule does not apply. *Cf. Desai v. Chambers Cnty. Appraisal Dist.*, 376 S.W.3d 295, 300 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding envelope was properly addressed under mailbox rule where envelope was delivered to correct location despite incorrect address).

5

to meet section 2308.456's 14-day deadline deprived the justice court of jurisdiction to conduct the boot hearing.

We begin with the presumption that the Legislature did not intend to make a statute jurisdictional and are mindful that this presumption may only be overcome with clear legislative intent. *See City of DeSoto v. White*, 288 S.W.3d 389, 393–95 (Tex. 2009) ("[W]e have been reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect."). Statutory interpretation principles guide our evaluation of whether a statute's requirement is jurisdictional. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 392 (Tex. 2014) (citing *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009)).

"We must determine whether the Legislature intended a jurisdictional bar." *Crosstex Energy*, 430 S.W.3d at 392 (citing *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004) ("Since the Legislature is bound to know the consequences of making a requirement jurisdictional, one must ask, in trying to determine legislative intent, whether the Legislature intended those consequences.")). We may consider the following relevant factors in determining whether a statutory requirement is jurisdictional: (1) the plain meaning of the statute; (2) the presence or absence of specific consequences for noncompliance; (3) the purpose of the statute; and (4) the consequences that result from each

possible interpretation. *Crosstex Energy*, 430 S.W.3d at 392 (first citing *White*, 288 S.W.3d at 395; then citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex. 2001)).

We address the first two factors—the statute's plain meaning and the presence or absence of specific consequences for noncompliance—together. Section 2308.456 creates a mechanism by which a person whose car has been booted may request a hearing to challenge the propriety of the booting or the charges imposed or collected in connection with the removal of the boot. TEX. OCC. CODE ANN. § 2308.456(a). The words of the statute indicate that such protests should be lodged and adjudicated quickly. *See* TEX. OCC. CODE ANN. § 2308.456(a) (imposing 14-day deadline to request hearing); *id.* § 2308.458(a) (West 2012) (imposing 21-day deadline for justice court to hold hearing after receiving hearing request). But the statute does not expressly state that a failure to meet either deadline deprives the justice court of jurisdiction to conduct the hearing. Rather, subsection 2308.456(d) states a different consequence for the failure to file a hearing request within 14 days: a "person who fails to deliver a request in accordance with Subsection (a) *waives* the right to a hearing." TEX. OCC. CODE ANN. § 2308.456(d) (emphasis added). The statute does not include any consequence for failure to hold a hearing within 21 days.

7

Texas courts have held that statutes with similar provisions are not jurisdictional, even if the plain meaning of the statute suggests a jurisdictional bar. In *Texas Department of Public Safety v. Shaikh*, 445 S.W.3d 183 (Tex. App.—Houston [1st Dist.] Jan. 21, 2013, no pet.), this Court held that Texas Government Code subsection 411.180(b) is not jurisdictional even though it states that a hearing shall not be held more than 60 days after the date of the request. *Id.* at 190. The *Shaikh* court reasoned that this was so because "the statute does not contain any explicit language indicating that failure to comply with the timing requirement deprives either the justice court or the county court at law of subject matter jurisdiction." *Id.* at 188. Similarly, in *Texas Department of Public Safety v. Guerra*, 970 S.W.2d 645 (Tex. App.—Austin 1998, pet. denied), the Austin Court of Appeals held that the Department of Public Safety is not precluded from holding a license suspension hearing even if it fails to comply with the Transportation Code's requirement that the hearing "shall be held" within 40 days after the driver receives notice of the suspension. *Id.* at 648–50. The *Guerra* court found significant the Legislature's failure "to attach a consequence to a situation where a hearing is held outside the 40 days of the notice of [driver's license] suspension" and noted that the Legislature "could have easily provided consequences for noncompliance." *Id.* at 649; *see also Crosstex Energy*, 430 S.W.3d at 392–93 ("Although the plain meaning might suggest a jurisdictional bar, it does not meet

8

the requisite level of clarity to establish the statute as jurisdictional."); *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009) (holding statute was not jurisdictional despite statute's language that provided for a "one-year dismissal date" and that a party may waive its right to dismissal if party "fails to make a timely motion to dismiss the suit" because nothing indicates that provisions are jurisdictional).

The provisions of the Towing and Booting Act at issue in this case are analogous. The statute reflects that boot hearings should be requested within 14 days, and it guarantees the right to such a hearing only if a person requests it within 14 days. But the Legislature's failure to expressly state that failing to meet the 14-day deadline results in a loss of jurisdiction as opposed to a waiver points toward the conclusion that section 2308.456(a) is not jurisdictional.

Under the third factor, we consider the purpose of the statute. As discussed earlier, the statute establishes a quick process by which to adjudicate a protest by a party whose car was booted, either for lack of probable cause or for the imposition or collection of excessive charges in connection with the removal of the boot. *See* TEX. OCC. CODE ANN. § 2308.452 (owner of booted vehicle is entitled to hearing on whether probable cause existed for booting); *id.* § 2308.458(c-1) (West 2012) (issues in hearing are whether probable cause existed for booting and whether boot removal charge was greater than amount authorized by political subdivision under

9

section 2308.2085); *id.* § 2308.458(a) ("A hearing under this chapter shall be held before the 21st calendar day after the date the court receives the request for the hearing). The statute also deters booting without probable cause and the imposition of excessive charges in connection with boot removal. *See id.* § 2308.458(e)(1) (West 2012) (justice court may award court costs and attorney's fees to the prevailing party). In *Shaikh*, a panel of this court decided that a statute with an analogous purpose—to create a quick process by which to adjudicate concealed handgun license suspensions—was not jurisdictional. *See* 445 S.W.3d at 190 (holding statute's 60-day timing provision was not jurisdictional where purpose of hearing is to provide opportunity for licensee to challenge revocation and justice court to immediately return concealed handgun license to licensee if it finds revocation not supported by preponderance of evidence).

Under the fourth factor, we consider the implication of holding that the statute is jurisdictional. If it were, then a justice court's determination regarding probable cause or propriety of charges for the booting would be vulnerable to a collateral attack long after a justice court adjudicated any case in which the car owner failed to timely request the hearing. *See Crosstex Energy*, 430 S.W.3d at 392; *In re Brehmer*, 428 S.W.3d at 923–24 (fourth factor suggests statutes not jurisdictional because "[i]f we held that these deadlines were jurisdictional, lack of jurisdiction would leave a decision vulnerable to collateral attacks well after

10

completion of proceedings . . . ."); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (recognizing that deeming provision jurisdictional "opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment"). Accordingly, we conclude that the fourth factor weighs against holding that subsection 2308.456(a) is jurisdictional.

Having considered the four *Crosstex* factors, we conclude that the 14-day deadline in subsection 2308.456(a) is not jurisdictional. *See Crosstex*, 430 S.W.3d at 393; *Shaikh*, 2013 WL 373441, at *5–7; *see also City of Rockwall*, 246 S.W.3d 621, 625–26 (Tex. 2008) (holding that we generally construe statutory words according to their plain and common meaning unless such construction leads to an absurd result). Accordingly, we hold that Manderscheid's failure to timely request a hearing under subsection 2308.456(a) of the Towing and Booting Act did not deprive the justice court of jurisdiction to conduct the boot hearing, and that we therefore have jurisdiction to consider the merits of Manderscheid's appeal.

### Jury Trial and Dismissal for Want of Prosecution

In his second and third issues, Manderscheid complains that he had the right to a jury trial in his boot-hearing appeal and that the county court at law improperly refused his demand for a jury and dismissed his case for want of prosecution.

11

**A.** **Did Manderscheid have a right to a jury trial in his boot-hearing appeal?**

**1. Standard of Review and Applicable Law**

We review de novo the question of whether Manderscheid had a constitutional right to a jury trial. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008) (statutory construction is question of law subject to de novo review). "The right to jury trial is one of our most precious rights, holding 'a sacred place in English and American history.'" *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (quoting *White v. White*, 196 S.W. 508, 512 (Tex. 1917)). The Texas Constitution twice guarantees the right to a jury trial. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995).

> Article I, section 15 of the Texas Constitution provides:
>
> The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency . . . .

TEX. CONST. art. I, § 15.[4] "Article I, section 15 maintains a right to trial by jury for those actions, or analogous actions, tried by jury when the Constitution was adopted in 1876." *Garcia*, 893 S.W.2d at 526 (Tex. 1995) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 450 (Tex. 1993)); *see Adams v. Tex.*

---

[4] The Seventh Amendment to the U.S. Constitution contains a similar guarantee. *See* U.S. CONST. amend. VII. However, although "[t]he right to a jury trial in civil cases in federal courts is found in the Seventh Amendment, . . . it has never been extended to the states." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 374 (Tex. 2000).

*State Bd. of Chiropractic Examiners*, 744 S.W.2d 648, 651 (Tex. App.—Austin 1988, no pet.) (Article I, section 15 "means the Legislature may not abrogate the right to a jury trial if it existed by statute or under the common law at the time the Constitution was adopted in 1876").

Article V, section 10 of the Texas Constitution provides:

> In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury . . . .

Tex. Const. art. V, § 10 (Judiciary Article). "Article V, section 10 protects the right to have a jury resolve fact questions in all 'causes' brought in the district courts." *Garcia*, 893 S.W.2d at 526. "Although the right to jury trial under [Article V, section 10] is potentially broader than under [Article I, section 15] in that it covers all 'causes' regardless of whether a jury was available in 1876, it can also be narrower in that not all adversary proceedings are 'causes' within the meaning of [Article V, section 10]." *Id.* at 527. For example, appeals from administrative decisions are not "causes" within the meaning of Article V, section 10. *Id.* The mere fact that a statute provides for judicial review "does not implicate the right to jury trial" under Article V, section 10. *Id.*

## 2. Analysis

We conclude that Manderscheid did not have a constitutional right to a jury trial in his boot-hearing appeal. We begin by analyzing the statute governing boot-

13

hearing appeals to determine whether the statute provides for a jury trial. Section 2308.452 of the Towing and Booting Act provides that the owner or operator of a booted vehicle "is entitled to a hearing on whether probable cause existed for the . . . booting." TEX. OCC. CODE ANN. § 2308.452 (West 2010). Boot hearings are held in justice court. *See* TEX. OCC. CODE ANN. § 2308.453(2) (boot hearing under Towing and Booting Act shall be held in justice court in county in which parking facility is located). The issues to be determined in a boot hearing are "whether probable cause existed for the booting" and "whether [the] boot removal charge . . . was greater than the amount authorized . . . ." TEX. OCC. CODE ANN. § 2308.458(c-1). Section 2308.458(d) provides that the court "*shall* make written findings of fact and conclusions of law" regarding these issues. TEX. OCC. CODE ANN. § 2308.458(d) (emphasis added). Thus, the Towing and Booting Act requires the court to act as the factfinder in a boot hearing and makes no mention of a jury. *See id.*

The Towing and Booting Act also provides for an appeal from the boot hearing, to be "governed by the rules of procedure applicable to civil cases in justice court, except that no appeal bond may be required by the court." TEX. OCC. CODE ANN. § 2308.459 (West 2012). The applicable Texas Rule of Civil Procedure provides that an appeal from the justice court "must be tried de novo in county court. "A trial de novo is a new trial in which the entire case is presented as

if there had been no previous trial." TEX. R. CIV. P. 506.3. Accordingly, an appeal to county court from a boot hearing in justice court should be conducted as though the initial hearing in justice court never occurred, with the county court at law making the statutorily-required findings anew and without any deference to those made by the justice court. *See id.*; TEX. OCC. CODE ANN. § 2308.458(d) (court shall make findings regarding probable cause for booting and whether fee imposed was excessive); *id.* § 2308.459 (appeal to be governed by rules of procedure applicable to civil cases in justice court). In short, the Towing and Booting Act's lack of an express provision for a jury trial, together with the provision requiring the court to be the factfinder, lead us to conclude that there is no right to a jury trial in an appeal from a section 2308.458 hearing.

Other statutes permitting similar types of appeals expressly provide for a jury trial. For example, Chapter 821 of the Health and Safety Code, which governs the disposition of cruelly-treated animals, provides for an initial hearing in justice court in which the court must make a finding regarding whether an animal's owner has cruelly treated the animal. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.023(d) (West 2011). An owner may appeal from a finding of cruelty to the county court, which "shall consider the matter de novo." TEX. HEALTH & SAFETY CODE ANN. § 821.025(d) (West 2011). The Health and Safety Code goes on to expressly state that "[a] party to the appeal is entitled to a jury trial on request."

TEX. HEALTH & SAFETY CODE ANN. § 821.025(d). Similarly, Chapter 42 of the Tax Code, which provides for appeals to district courts from administrative decisions by taxing entities, states that "[r]eview is by trial de novo" and that "[a]ny party [to the appeal] is entitled to trial by jury on demand." TEX. TAX CODE ANN. § 42.23(a), (c) (West 2013). Comparison of these statutes with the Towing and Booting Act strengthens our conclusion that there is no right to a jury trial in an appeal from a boot hearing under section 2308.459.[5]

Our inquiry does not end here, however. We must also consider whether the Legislature was constrained by either of the two constitutional provisions guaranteeing the right to a jury to provide for a right to a jury trial in this context. We conclude that it was not.

With respect to Article I, section 15, we consider whether a boot-hearing appeal or an analogous action existed when the Constitution was adopted in 1876. *Garcia*, 893 S.W.2d at 526 (Article I, section 15 "maintains a right to trial by jury for those actions, or analogous actions, tried by jury when the Constitution was adopted in 1876"); *Adams*, 744 S.W.2d at 651 (Article I, section 15 "means the Legislature may not abrogate the right to a jury trial if it existed by statute or under

---

[5]     In support of his claim that he was entitled to a jury trial, Manderscheid cites *Ogu v. C.I.A. Services, Inc.*, No. 01-07-00933-CV, 2009 WL 41462 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.). That case involved analysis of the Declaratory Judgment Act, which is not analogous to the statute at issue here. *See id.* at *3–4. Accordingly, *Ogu* does not affect our analysis.

16

the common law at the time the Constitution was adopted in 1876"). Manderscheid does not identify any such action, and we have found none.[6] The boot hearing procedure was created by statute in 1995, *see* Transportation Code, 74th Leg., ch. 165, § 1, 1995 Tex. Gen. Laws 1065, and an appeal provision was added in 2005, *see* Act of May 25, 2005, 79th Leg., ch. 737, § 8, 2005 Tex. Gen. Laws 2552. Authorization to boot an unauthorized vehicle is a statutory creation that is civil in nature, and the fee associated with removal of a boot is not a criminal penalty such that it could be analogized to criminal charges. *See* Tex. Occ. Code Ann. §§ 2308.251–.2555 (West 2012) (defining unauthorized vehicles); § 2308.257 (West 2012) (providing for booting of unauthorized vehicle); *Tex. Ass'n of Bus.*, 852 S.W.2d at 450–51 (statute permitting assessment of civil penalties did not violate right to jury trial guaranteed by Texas Constitution). The appeal from a boot hearing is likewise a statutorily-created procedure that has no counterpart in a right that was typically enforced under the common law. Therefore, we conclude that a boot-hearing appeal is not analogous to any action tried to a jury in 1876. Accordingly, we hold that a boot-hearing appeal is not a claim for which the right to a jury trial is constitutionally preserved under Article I, section 15. *See, e.g.*, *Tex. Ass'n of Bus.*, 852 S.W.2d at 451 (no right to jury trial

---

[6] Manderscheid argues that parties to a divorce proceeding had a constitutional right to a jury trial under Article I, section 15, but does not explain how a boot hearing is analogous to a divorce, and we decline to hold that it is.

17

attached to appeals from adjudications under environmental statutes and regulations enacted after 1876).

The second constitutional guarantee of a right to a jury trial, Article V, section 10, guarantees the right to a jury only in "all causes in the *District Courts*." TEX. CONST. art. V, § 10 (emphasis added); *Garcia*, 893 S.W.2d at 526. Thus, Article V, section 10, by its terms, does not apply to boot hearings or boot-hearing appeals, which are heard only in justice court and county court at law. *See* TEX. R. CIV. P. 506.3; TEX. OCC. CODE ANN. § 2308.459. Accordingly, Article V, section 10 does not guarantee the right to a jury in a boot-hearing appeal.

To conclude, we hold that Manderscheid did not have a statutory or constitutional right to a jury trial in his boot-hearing appeal in the county court at law.[7]

**B.    Did the trial court abuse its discretion in denying Manderscheid's request for a jury and dismissing the case for want of prosecution?**

**1. Standard of Review and Applicable Law**

We review a trial court's denial of a party's demand for a jury trial under an abuse of discretion standard. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d

---

[7]    A recent case from this Court, *Emesowum v. Milam Street Auto Storage, Inc.*, No. 01-14-00472-CV, 2015 WL 3799371, at \*3 (Tex. App.—Houston [1st Dist.] June 18, 2015, no pet.) (mem. op.), concluded that Emesowum was not entitled to a jury trial in a similar proceeding, a tow hearing appeal, because the jury request was untimely. However, because the jury demand in *Emesowum* was untimely, that opinion did not consider whether a constitutional right to a jury trial existed in the first instance.

664, 666 (Tex. 1996). When conducting an abuse of discretion review, we examine the entire record. *Id.* We only find an abuse of discretion if the trial court's decision is "arbitrary, unreasonable, and without reference to guiding principles." *Id.*

We review a dismissal for want of prosecution for an abuse of discretion. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam); *Coleman v. Lynaugh*, 934 S.W.2d 837, 838 (Tex. App.—Houston [1st Dist.] 1996, no writ). Under this standard, we reverse a judgment only if the district court acted arbitrarily and unreasonably, or if it acted without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The appellant bears the burden of producing a record that shows the district court abused its discretion. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987).

The trial court's authority to dismiss for want of prosecution stems from two sources: (1) Rule 165a of the Texas Rules of Civil Procedure, and (2) the court's inherent power. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). The common law vests the trial court with the inherent power to dismiss, independent of the rules of civil procedure, when a plaintiff fails to prosecute his or her case with due diligence. *See Rizk v. Mayad*, 603 S.W.2d 773,

19

776 (Tex. 1980) ("The power of the courts to move their dockets existed at common law and independently of statutes and rules of procedure."); *Veterans' Land Bd. v. Williams*, 543 S.W.2d 89, 90 (Tex. 1976) (per curiam) (holding that court has inherent power to dismiss suit for failure to prosecute it with due diligence even without statutory or rule authority). Therefore, even without statutory authority, a court has the right to dismiss a suit for failure to prosecute it with due diligence. *Bevil v. Johnson*, 307 S.W.2d 85, 87 (Tex. 1957).

## 2. Analysis

The record reflects that, after the county court at law ruled that Manderscheid was not entitled to a jury trial, Manderscheid, who was acting pro se, refused to proceed to trial. The county court at law explained:

> You can either proceed with a non-jury trial on the docket today as it is set and you have been duly noticed and counsel for the other side is here ready to go to trial. That is available. That's option number one. Or option number two is, if you choose to leave the courtroom as you announced prior to us being on the record, then do understand that your case will be dismissed. So your choice. What would you like to do?

Manderscheid continued to demand a jury trial and stated, "[I]f I'm not under arrest, I intend to leave the court." The court told Manderscheid, "Understanding if you leave this courtroom, your case will be dismissed?" Manderscheid responded, "I'm hearing what you're saying. If that's the way it is, I have no choice. I have no choice." The court further asked, "You do not wish to have a

20

non-jury trial; is that correct?" Manderscheid responded, "I do not wish to have a non-jury trial." Boot Man then orally moved to dismiss the case for want of prosecution and the county court at law dismissed the case.

Having concluded that Manderscheid did not have a constitutional right to a jury trial, we hold that the county court at law did not abuse its discretion in denying his request for a jury. *See Rhyne*, 925 S.W.2d at 666 (trial court abuses discretion in denying jury request only if decision is "arbitrary, unreasonable, and without reference to guiding principles"). The county court at law repeatedly offered Manderscheid the opportunity to proceed to a bench trial, and warned him that failure to do so would result in his case being dismissed. Accordingly, we hold that the county court at law did not abuse its discretion in dismissing Manderscheid's case for want of prosecution after he refused to proceed to trial. *See id.*; *see also Williams*, 543 S.W.2d at 90 (court has inherent power to dismiss suit for failure to prosecute with due diligence).

We overrule Manderscheid's second and third issues.[8]

---

[8] Because we have concluded that Manderscheid was not entitled to a jury trial on appeal to county court and that the county court did not err in dismissing his case for want of prosecution, we do not reach Manderscheid's first issue, in which he contends that the county court erred in failing to conduct the appeal hearing within 21 days. *See* TEX. R. APP. P. 47.1; *State v. Ninety Thousand Two Hundred Thirty–Five Dollars and No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 294 (Tex. 2013) (court of appeals need only address issues raised and necessary to disposition of appeal).

21

**Accuracy of Reporter's Record and Abatement Hearing**

In his fourth, fifth, sixth, and seventh issues, Manderscheid contends there are inaccuracies in the reporter's record and complains about the manner in which the county court at law conducted a hearing on our order of abatement to determine the accuracy of the reporter's record. Specifically, Manderscheid contends that the county court at law erred by placing "inappropriate inclusions" into the court's findings, "thwarting [his] Motions and subpoenas," and denying his requests to elicit oral testimony from the county court at law judge and court reporter at the abatement hearing.

## A. Standard of Review and Applicable Law

Courts of appeals may abate an appeal and direct the trial court to conduct a hearing to determine whether there are inaccuracies in the reporter's record. *See* TEX. R. APP. P. 34.6(e)(2) (requiring the trial court to settle a dispute concerning inaccuracies in the reporter's record when parties cannot agree on whether or how to correct); *id.* 34.6(e)(3) (allowing appellate court, if dispute arises regarding accuracy after filing of reporter's record in appellate court, to submit dispute to trial court for resolution). We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law to those facts. *See Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.* 109 S.W.3d 900, 907 (Tex. App.—Dallas 2003, no pet.)

22

(court of appeals defers to trial court on factual findings and reviews legal conclusions de novo); *City of San Antonio v. River City Cabaret, Ltd.*, 32 S.W.3d 291, 293 (Tex. App.—San Antonio 2000, pet. denied) (same).

**B. Analysis**

### 1. The reporter's record is accurate.

After Manderscheid filed various motions with this Court challenging the accuracy of the reporter's record, we abated and remanded the case for a hearing in which the county court at law was to determine the accuracy of the court reporter's record. We directed the county court at law to (1) have a court reporter record the hearing and file the reporter's record with this Court and (2) make findings and recommendations. The trial court found that no evidence supported Manderscheid's claims that the reporter's record was inaccurate.

At the abatement hearing, Manderscheid claimed there were several inaccuracies in the record. First, Manderscheid complained that the record omitted exchanges that took place before the court reporter began recording the proceedings. The record reflects what appears to be a complete record of the proceedings held on January 14, 2013. Moreover, it is the appellant's burden to request the court reporter to record the proceedings and, therefore, an appellant waives argument about any exchanges not recorded. *See Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.)

(appellant's burden to "request" court reporter to make record of proceedings and bring forward sufficient record to show error committed by trial court); *Reyes v. Credit Based Asset Servicing & Securitization*, 190 S.W.3d 736, 740 (Tex. App.—San Antonio 2005, no pet.) (to preserve error for appeal, party has burden of objecting to court reporter's failure to record proceedings); *see also* TEX. GOV'T CODE ANN. § 52.046(a) ("on request," court reporter must record all proceedings). Manderscheid's complaint that the court reporter should have begun recording proceedings earlier than she did does not constitute reversible error on the part of the county court at law.

Second, Manderscheid complained that the reporter's record includes the county court at law's inaccurate characterizations of Manderscheid's arguments and level of cooperation. While Manderscheid frames this argument as one regarding inaccuracy in the record, he does not assert that the transcription reflects something other than what the court actually said on the record. Rather, his complaint is that the court made the statements reflected in the record and that they were unfavorable to him. Because Manderscheid does not dispute that the court made the statements reflected in the reporter's record, this is not an argument about the accuracy of the record and does not support reversal.

Third, Manderscheid asserted that the record was inaccurate because three blank lines appear on the bottom of the page that stated Manderscheid was duly

sworn. Manderscheid did not argue at the hearing that the court reporter omitted anything, nor did he assert that the blank lines amounted to an inaccuracy. The county court at law found that the blank lines did not constitute an inaccuracy, and we defer to the court's finding of no inaccuracy in the record. *See Air Park-Dallas Zoning Comm.*, 109 S.W.3d at 907; *City of San Antonio*, 32 S.W.3d at 293.

Fourth, Manderscheid argued that the portion of the reporter's record stating that Manderscheid was duly sworn was inaccurate. Manderscheid claimed that he was never sworn in and that the record inaccurately reflects that he was. But the county court at law found otherwise: "Pages 3 and 4 of the reporter's record accurately reflect that the trial court placed Mr. Manderscheid under oath." Because the record supports the county court at law's finding, we defer to the finding and conclude that there was no error in its conclusion that the reporter's record is accurate. *See Air Park-Dallas Zoning Comm.*. 109 S.W.3d at 907; *City of San Antonio*, 32 S.W.3d at 293.

We overrule Manderscheid's complaints regarding inaccuracies in the reporter's record.

## 2. The county court at law did not commit reversible error in connection with the Texas Rule of Appellate Procedure 34.6 hearing.

Manderscheid complains that the county court at law erred in "thwarting" Manderscheid's motions and subpoenas relating to the Texas Rule of Appellate

25

Procedure 34.6 hearing and in denying him the opportunity to examine the court reporter and judge during that hearing.

Manderscheid issued subpoenas on the county court at law judge and court reporter on October 4, 2014, four days before the Texas Rule of Appellate Procedure 34.6 hearing. But the record reflects that the subpoenas were returned unserved on October 9, 2013, the day after the hearing took place. Because Manderscheid did not effect service as required by Texas Rule of Civil Procedure 176.5, no person was required to appear to testify in response to Manderscheid's subpoenas. TEX. R. CIV. P. 176.5; TEX. R. CIV. P. 176.6 (requiring compliance by a person served). Manderscheid's complaint that the county court at law thwarted his efforts to secure testimony through the subpoenas has no merit.

We turn finally to Manderscheid's complaint that the county court at law erred in "thwarting" his motions. On the day of the hearing, Manderscheid filed a motion for continuance to obtain counsel and a motion to disqualify the judge.

Texas Rule of Civil Procedure 18a(a) requires that a motion for disqualification "be verified" and "state with detail and particularity facts that . . . are within the affiant's personal knowledge," "would be admissible in evidence," and "if proven, would be sufficient to justify recusal or disqualification." TEX. R. CIV. P. 18a(a). When a party files a motion for disqualification, "the clerk of the court must immediately deliver a copy to the respondent judge and to the presiding

26

judge of the administrative judicial region in which the court is located ("the regional presiding judge")." TEX. R. CIV. P. 18a(e)(1). The respondent judge, "within three business days after the motion is filed, must either sign and file with the clerk an order of . . . disqualification; or sign and file with the clerk an order referring the motion to the regional presiding judge." TEX. R. CIV. P. 18a(f)(1).

Here, the record does not reflect that the judge of the county court at law complied with Texas Rule of Civil Procedure 18a(f)(1) by filing either an order of disqualification or an order referring the motion to the regional presiding judge. *See id.* However, even if the court failed to comply with the requirements of Rule 18a, we conclude that the error was harmless. The sole basis for Manderscheid's motion to disqualify was his contention that the trial judge had a conflict of interest because she would testify as a fact witness at the Texas Rule of Appellate Procedure 34.6 hearing. But the trial court did not testify as a fact witness at the hearing. Accordingly, any error on the part of the trial court in failing to abide by Rule 18a was harmless. *See* TEX. R. CIV. P. 44.1(a) (no judgment may be reversed based on trial court error unless error probably caused rendition of improper judgment or prevented appellant from properly presenting its case on appeal); *Walker v. O'Guin*, No. 10-05-00368-CV, 2007 WL 64448, at *4 (Tex. App.— Waco Jan. 10, 2007, no pet.) (any error in judge's failure to refer motion to presiding judge was harmless because motion did not state valid basis for

27

disqualification); *Spigener v. Wallis*, 80 S.W.3d 174, 181 (Tex. App.—Waco 2002, no pet.) (any error in failing to refer disqualification motion was harmless where "record affirmatively reflects that [the judge] is not disqualified").

Lastly, we conclude that the trial court did not abuse its discretion in denying Manderscheid's motion for continuance of the Texas Rule of Appellate Procedure 34.6 hearing. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (we review denial of motion for continuance for abuse of discretion). A motion for continuance must include an affidavit stating sufficient cause. *See* TEX. R. CIV. P. 251 (no continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law"). "If a motion for continuance is not verified or supported by affidavit, we will presume the trial court did not abuse its discretion in denying the motion." *Daugherty v. Jacobs*, 187 S.W.3d 607, 619 (Tex. App.—Houston [14th Dist.] 2006, no pet) (first citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); then citing *Ohlhausen v. Thompson*, 704 S.W.2d 434, 436–37 (Tex. App.—Houston [14th Dist.] 1986, no writ)). The record reflects that Manderscheid's motion for continuance was not verified or supported by an affidavit. Accordingly, we conclude that the county court at law did not abuse its discretion in denying Manderscheid's motion for continuance.

We overrule Manderscheid's fourth, fifth, sixth, and seventh issues.

28

**Conclusion**

We affirm the judgment of the county court at law. We deny all pending motions as moot.


Rebeca Huddle
Justice


Panel consists of Justices Massengale, Brown, and Huddle.